**MS&B**  McMANIMON · SCOTLAND · BAUMANN          75 Livingston Avenue, Roseland, NJ 07068  (973) 622-1800

**Anthony Sodono, III**
**Writer's Direct Dial:  (973) 721-5038**
**Writer's Direct Fax:  (973) 681-7233**
**asodono@msbnj.com**

Client No. 82090.001

February 23, 2021

<u>**VIA ECF**</u>
Honorable Andrew B. Altenburg, Jr., U.S.B.J.
Mitchell H. Cohen U.S. Courthouse
400 Cooper Street, 4th Floor
Courtroom 4B
Camden, New Jersey 08101

>       Re:    **Rosa Maria Styles**
>              **Chapter 11 Case No. 19-32881 (ABA)**
>              <u>**Confirmation Hearing:  February 25, 2021 at 10:00 a.m.**</u>

Dear Judge Altenburg:

        As you know this firm (referred to herein as "MSB") is counsel to the chapter 11 debtor and debtor-in-possession, Rosa Maria Styles (the "Debtor").  The Debtor's Confirmation Hearing is scheduled for Thursday, February 25, 2021, at 10:00 (the "Hearing").

        The Debtor is filing a First Amended Plan simultaneously with this letter.  The First Amended Plan is also submitted herewith for Your Honor's ease of reference.[1]  In short, the First Amended Plan does not change payment to any creditors that were proposed under the original plan – all creditors were and are being paid in full under the First Amended Plan.  Moreover, we have incorporated and accepted changes recommended by the Office of the United States Trustee.  The only change is that certain property located in Avalon, New Jersey was going to be conveyed to Thomas J. Welsh, Jr., for $2.9 million.  Very recently, the Debtor obtained another offer for $3.5 million – from Mr. Edward W. Weingartner, III.

        The First Amended Plan provides as follows: a sale to Mr. Weingartner for $3.5 million to close within sixty (60) days of the Effective Date (as defined in the Plan).  Alternatively, if Mr. Weingartner does not close, the Debtor has the option of selling to Mr. Welsh for $2.9 million (as proposed in the original plan) or paying the debts of all creditors in full.  Any of the alternatives provides for full payment to all creditors.   Thus, nothing changes in terms of payments to creditors under the First Amended Plan.

        This letter is written to request either (1) a two-week adjournment so that all parties can review the First Amended Plan, or (2) allow the confirmation hearing to go forward on Thursday of the First Amended Plan.  Since all creditors will be paid in full – similar to the original plan, no creditors are prejudiced by allowing the First Amended Plan to be heard on Thursday.  That said, however, we recognize that parties should be afforded a reasonable notice period and due process and thus, we defer

---

[1] <u>See</u> Exhibit A.

to Your Honor on whether a hearing on Thursday satisfies such due process.   We are mindful that
Your Honor has been most gracious by granting prior adjournments and the Debtor most appreciates
Your Honor's courtesy.   It was imperative, however, that we file a First Amended Plan so that the
Debtor will realize an excess of $600,000 without disturbing any payments to creditors.

The following facts are presented as a summary of this case.   As an initial matter, our firm
replaced original Debtor's counsel, i.e, Scott Kaplan, Esq.   In short, the Debtor was not pleased with
Mr. Kaplan's legal advice or strategy which delayed this case for some time.   Immediately after MSB
was retained, we filed a plan and moved the case forward.   Moreover, as highlighted herein, with
MSB's guidance, the Debtor (and her spouse) have made significant progress in addressing creditor's
claims and have pre-paid real estate taxes and insurance.   Moreover, as Your Honor is aware (and is
undisputed), the Avalon Property is valued at approximately $1 million more than Mr. Welsh's first
mortgage.

On September 3, 2020, the Debtor filed a Chapter 11 Plan which provided for a sale of 43 W.
12th Street, Avalon, New Jersey (the "Avalon Property") to Mr. Thomas J. Welsh, Jr., the Debtor's
secured creditor ("Welsh").   The sale to Welsh was for $2.9 million.   Welsh agreed to pay the difference
between the amount owed to him (approximately $2.4 million) under certain contracts and the agreed
value of $2.9 million, leaving about $500,000 for creditors.

Welsh filed an objection to the Plan because, amongst other reasons, a title search of the Avalon
Property disclosed judicial/judgment liens of $19,615.62, and tax records indicated a tax sale certificate
in the amount of $17,276.32 for 2018 taxes, and total taxes, including interest, totaling $41,473.80.
See Doc. 152.   As noted below, the judgment/judicial liens are satisfied and the tax claims are not only
paid but pre-paid for the next quarter.

As set forth above, the Debtor received a recent offer from Mr. Weingartner for $3,500,000,
all cash.   See Offer Letter attached as **Exhibit B**.

Over the last several weeks the Debtor has researched the judgment liens, taxes owed, made
payments, and obtained releases for such judgments.

The Debtor wired $53,000 to the Tax Clerk of Avalon, New Jersey for the account designated
to the Avalon Property.   The $53,000 exceeded the amount due and the overage will be applied to the
second quarter taxes.   As such, the payment brought the taxes, water / sewer current.   The Tax Clerk
advised the tax sale certificate will be endorsed for cancellation by the lien holder.   See Email attached
as **Exhibit C**.   The Tax Clerk advised today that there is a pending wire transaction for $4,000 which
exceeds the amount due and the remainder will be applied to the third quarter.   See Email attached as
**Exhibit D**.

The Debtor's petition listed a claim for Drinkwater & Goldstein, LLP ("Drinkwater").   We
obtained an email from the Drinkwater firm confirming its debt with the Debtor has been satisfied in
full.   See Email attached as **Exhibit E**.

The home insurance for the Avalon Property has been paid in full and no premiums are due
until December 14, 2021.   See letter attached as **Exhibit F**.

We communicated with Bluewater Yacht Companies ("Bluewater Yacht") as it is listed as a
judgment holder on the judgment search.   The controller of Bluewater Yacht advised he contacted his
New Jersey attorney who handled the judgment to obtain a release in favor of the Debtor.   See Email

attached as **Exhibit G**.  Also see letter dated March 22, 2019, advising that all claims and liens have been satisfied and released.  <u>See</u> Letter attached as **Exhibit H**.

The Debtor listed Higgins Landscaping ("Higgins") as a creditor on her petition.  The Debtor and Higgins settled the claim and the parties entered into a mutual general release.  <u>See</u> Release attached as **Exhibit I**.

Bruce Sussman entered into a Stipulation of Judgment with, amongst other parties, the Debtor, in the amount of $229,000, pending in the Superior Court of New Jersey, Law Division, Camden County, bearing docket number CAM-L-001159-20.  The Debtor satisfied this judgment in full and Sussman has released his claim.

The Internal Revenue Service ("IRS") filed two claims (Claims 1 & 5) against the Debtor.  The claims are duplicates.  Claim 5 was amended and reduced to $0.  Thus, the IRS' claim has been resolved.

Atlantic City Electric Company ("AC Electric") filed a claim against the Debtor in the amount of $4,486.18 (the "Claim").  The Debtor contacted AC Electric and its records do not reflect any amount owed.  Accordingly, on February 10, 2021, the Debtor filed an Objection to expunge AC Electric's Claim.  <u>See</u> Doc. 164.

The First Amended Plan will not change the treatment of CEBV, LLC's claim of $450,000.  In fact, CEBV will be paid from the proceeds of the sale of the Avalon Property.

It is evident from the above that the Debtor has used her extension of time to make substantial progress to pay creditors and obtain releases.  With these new developments, we reached out to Welsh's counsel to request a consensual two week adjournment and advised of the Debtor's intent to file a First Amended Plan which not only provides for full payment to her client but shows real estate taxes are paid (which would prime Mr. Welsh's mortgage) and pre-paid.  Moreover, the Debtor has procured home-owner's insurance through December 2021.   In addition, the Debtor offered an adequate protection payment to Mr. Welsh even though Mr. Welsh enjoys over a million dollars in equity above his mortgage claim.  Unfortunately, counsel for Mr. Welsh tried to strong arm the Debtor and requested a $200,000 payment for a two-week adjournment.

Accordingly, we request a brief call with the Court today or tomorrow if possible before the hearing on Thursday to discuss the status of the above matters and whether we will go forward on Thursday to confirm the First Amended Plan.

As always, we thank the Court for its courtesies.  Thank you.

Respectfully,

/s/ Anthony Sodono, III

Anthony Sodono, III

3

# EXHIBIT A

**McMANIMON, SCOTLAND & BAUMANN, LLC**
75 Livingston Avenue, Second Floor
Roseland, NJ 07068
(973) 622-1800
Anthony Sodono, III, Esq. (asodono@msbnj.com)
Sari B. Placona, Esq. (splacona@msbnj.com)
*Attorneys for Debtor and Debtor-in-Possession, Rosa Maria Styles*

| | |
|---|---|
| In re:<br><br>ROSA MARIA STYLES,<br><br>   Debtor. | Chapter 11<br><br>Case No. 19-32881 (ABA)<br><br>Honorable Andrew B. Altenburg, Jr., U.S.B.J. |

<u>**DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN OF**</u>

<u>**REORGANIZATION**</u>

Rosa Maria Styles, Debtor and Debtor-in-Possession/Plan Proponent (the "Debtor") respectfully submits her First Amended Plan of Reorganization pursuant to Chapter 11, Title 11 of the United States Code ("First Amended Plan" or "Plan")). *This First Amended Plan supersedes the Debtor's original plan of reorganization, however, it **does no**t change the distribution to creditors.*

The original plan called for a sale of the Avalon Property (defined herein) for $2.9 million to Thomas J. Welsh, Jr. ("Mr. Welsh"). The Debtor recently found another buyer for $3.5 million; therefor this Plan is being amended to reflect the sale to the buyer with certain alternative proposals as set forth herein. This Plan also discloses that the Debtor has satisfied over $500,000 in creditors' claims already and has pre-paid real estate taxes.

**McMANIMON, SCOTLAND & BAUMANN, LLC**
*Counsel to Debtor and Debtor-in-Possession,*
*Rosa Maria Styles*
By:___/s/ Anthony Sodono, III_____
    ANTHONY SODONO, III

    ___/s/ Rosa Maria Styles_____
    ROSA MARIA STYLES

Dated: February 23, 2021

# TABLE OF CONTENTS

**PAGE**

I. ............................................................................................................................................. 4

INTRODUCTION ...................................................................................................................... 4

II. ............................................................................................................................................ 5

CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ............................ 5

    A.   General Overview .............................................................................................. 5

    B.   Definitions............................................................................................................ 5

    C.   Unclassified Claims ......................................................................................... 11

        1.   Administrative Expenses and Fees ......................................................... 11

        2.   Priority Tax Claims.................................................................................. 13

    D.   Classified Claims and Interests ....................................................................... 13

        1.   Classes of Secured Claims ...................................................................... 13

        2.   Priority Non-Tax Claims......................................................................... 14

        3.   Class of General Unsecured Claims......................................................... 15

        4.   Class(es) of Equity Interest Holders ....................................................... 15

    E.   Acceptance or Rejection of Plan ...................................................................... 15

    F.   Means of Effectuating the Plan ........................................................................ 15

        1.   Funding for the Plan................................................................................ 15

        2.   Post-Confirmation Management ............................................................. 17

        3.   Disbursing Agent .................................................................................... 17

III. .......................................................................................................................................... 19

TREATMENT OF MISCELLANEOUS ITEMS ..................................................................... 19

    A.   Executory Contracts and Unexpired Leases .................................................... 19

        1.   Rejections................................................................................................ 19

    B.   Changes in Rates Subject to Regulatory Commission Approval ..................... 20

    C.   Retention of Jurisdiction................................................................................... 20

    D.   Procedures for Resolving Contested Claims..................................................... 22

    E.   Transfer/Sale of Property is not subject to Realty Transfer Fees or Tax under 11 U.S.C. § 1146(a) 22

    F.   Notices under the Plan ...................................................................................... 22

IV. .......................................................................................................................................... 23

EFFECT OF CONFIRMATION OF PLAN ............................................................................. 23

    A.   Discharge .......................................................................................................... 23

    B.   Release of Claims ............................................................................................. 23

    C.   Modification of Plan ......................................................................................... 24

    D.   Revesting of Property in the Debtor ................................................................. 25

    E.   Modification of Plan ......................................................................................... 25

F.    Post-Confirmation Conversion/Dismissal........................................................................ 25

4813-9907-5805, v. 1

# I.

# INTRODUCTION

Rosa Maria Styles is the Debtor in this Chapter 11 bankruptcy case.  On December 9, 2019, the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 et seq.  This document is the First Amended Plan proposed by the Debtor as the plan proponent.  Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the United States Bankruptcy Court for the District of New Jersey (the "Court"), and which is provided to help you understand the Plan.

This is a reorganizing plan.  In other words, the plan proponent seeks to accomplish payments under the Plan by satisfying Administrative Expense Claims *in full* on the Effective Date or as otherwise agreed by holders of allowed administrative claims, satisfying secured and unsecured creditors by one of three alternatives as follows:  (1) selling a Debtor owned asset, i.e., real property located in Avalon, New Jersey ("Avalon Property") to Edward W. Weingartner, III ("Mr. Weingartner" or the "Proposed Purchaser") for $3,500,000 (the "Sale") as explained more fully herein, or (2) if Mr. Weingartner does not close within sixty (60) days of the Effective Date (defined herein), the Avalon Property will be sold to Mr. Welsh for $2.9 million (as contemplated in the original plan), or (3) the Debtor has the option of not closing any sale and paying all creditors in full within sixty (60) days of the Effective Date.  In sum, any of the alternatives provides for payment in full to creditors The primary secured creditor on the Avalon Property is Mr. Welsh who is owed approximately $2.4 million as of December 2020.  Mr. Welsh enjoys a duly perfected first mortgage on the Avalon Property.  Mr Welsh shall be paid in full from the proceeds of the Sale

The Effective Date of the proposed Plan is the first day of the month following the date

which is thirty (30) days after the date on which the Confirmation Order becomes a Final Order

("Effective Date").

## II.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    General Overview

As required by the Bankruptcy Code, the Plan classifies claims and interests in various

classes according to their right to priority of payments as provided in the Bankruptcy Code. The

Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides

the treatment each class will receive under the Plan.

### B.    Definitions

**Scope of Definitions.** For purposes of this Plan, except as expressly otherwise provided or unless

the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings

assigned to them in this Section of the Plan. In all references herein to any parties' persons,

entities, or corporations, the use of any particular gender or the plural or singular number is

intended to include the appropriate gender or number as the text may require.

**1.** **Administrative Expense** shall mean any cost or expense of administration of the Chapter

11 case allowable under Section 507(a) of the Bankruptcy Code, including, without

limitation, any actual and necessary expenses of preserving the estate of the Debtor, any

actual and necessary expense of operating the businesses of the Debtor, any indebtedness

or obligation incurred or assumed by the Debtor in connection with the conduct of its

business or for the acquisition or lease of property or the rendition of services to the Debtor,

all allowances of compensation and reimbursement of expenses, any fees or charges

5

assessed against the estate of any Debtor under Chapter 123, Title 28, of the United States Code, and the reasonable fees and expenses incurred by the Proponents in connection with the proposal and confirmation of this Plan.

**2.**    **Allowed** when used as an adjective preceding the words "Claims" or "Equity Interest", shall mean any Claim against or Equity Interests of the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim or Equity Interest against such Debtor, or, if no proof of claim or Equity Interest is filed, which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Interest" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

**3.**    **Allowed Administrative Expense** shall mean any Administrative Expense allowed under Section 507(a)(1) of the Bankruptcy Code.

**4.**    **Allowed Unsecured Claim** shall mean an Unsecured Claim that is or becomes an Allowed Claim.

**5.**    **Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code.

6

6.  **Bankruptcy Court** shall mean the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

7.  **Bankruptcy Rules** shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

8.  **Business Day** means and refers to any day except Saturday, Sunday, and any other day on which commercial banks in New Jersey are authorized by law to close.

9.  **Chapter 11 Case** shall mean a case under Chapter 11 of the Bankruptcy Code in which Rosa Maria Styles is the Debtor.

10.  **Claim** shall mean any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. All claims as such term is defined in section 101(5) of the Bankruptcy Code.

11.  **Class** shall mean a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of this Plan.

12.  **Code** shall mean Title 11 of the United States Code, otherwise known as the Bankruptcy Code.

4813-9907-5805, v. 1

13.     **Confirmation** shall mean the entry of an Order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

14.     **Confirmation Hearing** shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan.

15.     **Confirmation Order** shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

16.     **Creditor** shall mean any person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtor' estates of any kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code. This includes all persons, corporations, partnerships, or business entities holding claims against the Debtor.

17.     **Debt** means, refers to and shall have the same meaning ascribed to it in Section 101(12) of the Code.

19.     **Debtor** shall mean Rosa Maria Styles.

20.     **Disbursing Agent** shall mean the Reorganized Debtor or any party appointed by and subject to Court approval, which shall effectuate this Plan and hold and distribute consideration to be distributed to holders of Allowed Claims and Allowed Equity Interests pursuant to the provisions of the Plan and Confirmation Order.

21.     **Disclosure Statement** means and refers to the Disclosure Statement filed by the Debtor as required pursuant to Section 1125 et seq. of the Bankruptcy Code.

22.     **Effective Date** shall mean the first day of the month following the date which is thirty (30) days after the date on which the Confirmation Order becomes a Final Order.

23.     **Equity Interest Holder** shall mean the holder of an equity interest in the Debtor.

4813-9907-5805, v. 1

24.    **Equity Interest** shall mean any interest in the Debtor represented by stock, warrants, options, or other rights to purchase any shares of stock in the Debtor, if applicable.  Insofar as the Debtor is an individual, there are no stocks, warrants or options.   The Debtor shall retain all of her property under the Plan except what is being conveyed under such Plan.

25.    **Final Order** shall mean an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

26.    **Impaired** when used as an adjective preceding the words "Class of Claims" or "Class of Equity Interest," shall mean that the Plan alters the legal, equitable, or contractual rights of the member of that class.

27.    **Person** shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof or other entity.

27.    **Petition Date** shall mean the date on which the Debtor filed this petition for relief commencing the Chapter 11 Case.

28.    **Plan** shall mean the First Amended Plan of Reorganization filed in these Proceedings, together with any additional modifications and amendments.

29.    **Priority Non-Tax Claim** shall mean a Claim entitled to priority under sections 507(a)(2),(3), (4), (5), (6) or (7) of the Bankruptcy Code, but only to the extent it is entitled to priority in payment under any such subsection.

30.    **Priority Tax Creditor** shall mean a Creditor holding a priority tax claim.

9

**31.**    **Priority Tax Claim** shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

**32.**    **Proceedings** shall mean the Chapter 11 Case of the Debtor.

**33.**    **Professional Persons** means and refers to all attorneys, accountants, appraisers, consultants, and other professionals retained or to be compensated pursuant to an Order of the Court entered under Sections 327, 328, 330, or 503(b) of the Bankruptcy Code.

**34.**    **Professional Claim** means and refers to a claim by any and all professionals as provided for in Sections 327, 328, 330 and 503(b) of the Bankruptcy Code.

**35.**    **Proponent** means Rosa Maria Styles.

**36.**    **Reorganized Debtor** means the Debtor after confirmation of the Plan.

**37.**    **Secured Claim** means and refers to a Claim which is secured by a valid lien, security interest, or other interest in property in which the Debtor have an interest which has been perfected properly as required by applicable law, but only to the extent of the value of the Debtor's interest in such property, determined in accordance with Section 506(a) of the Bankruptcy Code.

**38.**    **Unsecured Claim** shall mean any Claim against the Debtor which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date for such Debtor, and which is not (i) a secured claim pursuant to Section 506 of the Bankruptcy Code, as modified by section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority under sections 503 or 507 of the Bankruptcy Code. "Unsecured Claim" shall include all Claims against the Debtor that are not expressly otherwise dealt with in the Plan.

10

4813-9907-5805, v. 1

**39.**    **Other Definitions** a term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein. The words "herein", "hereof", "hereto", "hereunder", and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Moreover, some terms defined herein are defined in the section in which they are used.

**C.    Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class. The treatment of these claims is provided below.

**1.    Administrative Expenses and Fees**

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code Section 503(b). Fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee were also incurred during the Chapter 11 Case. The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's unpaid administrative fees and expenses ("Compensation"), an estimate of future professional fees and other administrative claims and fees and their treatment the Plan:

11

| NAME | AMOUNT ESTIMATED | TREATMENT | TYPE OF CLAIM |
|---|---|---|---|
| Law Offices of Scott E. Kaplan, LLC | $16,428.24[1] | Payment in full on Effective Date. | Administrative |
| McManimon, Scotland & Baumann, LLC | $25,000 estimated | Payment in full on Effective Date. | Administrative |
| Anthony D. Nini (accountant) | $3,500 Estimated | Payment in full on Effective Date. | Administrative |
| Robert J. Scully, Jr. (realtor)[2] | N/A | Payment in full on Effective Date. | Administrative |
| Office of U.S. Trustee Fees | TBD | Payment in full on Effective Date. | Administrative |
| **APPROXIMATE TOTAL** | **$44,928.24 (estimated)** | | |

**Court Approval of Professional Compensation and Expenses Required:**

The Court must approve all professional compensation and expenses. Each professional person requesting compensation in the case pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than ninety (90) days after the Confirmation Date. Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan. No motion or application is required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as those fees are determined by statute.

McManimon Scotland & Baumann, LLC, Anthony Nini, and Kaplan will be paid on the Effective Date.

---

[1] Pursuant to Docket No. 128, Kaplan filed an application for compensation totaling $46,508.84 (the "Application") however, the Debtor filed an objection to the Application, and Kaplan's fees were reduced to $ 16,428.24.
[2] Although Mr. Scully was retained, Mr. Scully is not owed any fees as he did not procure a sale of the Avalon Property.

12

## 2.   Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires, and thus this Plan provides, that each holder of such a 507(a)(8) priority tax claim receives the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax.

The Debtor dispute these amounts and reserves the right to review these claims.  Priority tax claims shall be satisfied in accordance with the requirements of Section 507(a)(8). The Debtor shall pay creditors holding priority tax claims over sixty (60) months in accordance with 11 U.S.C. § 1129(a)(9)(C)(ii).

| DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | AMOUNT OWED | TREATMENT |
|---|---|---|---|---|
| Department of Treasury, Internal Revenue Service (POC 1) | N | N | Per the filed POC 1, the amount owed was $8,429.70[3] | N/A – claim is zero |
| Department of Treasury, Internal Revenue Service (POC 5) | N | N | $8.429.70[4] | N/A – claim is zero |

## D.    Classified Claims and Interests

## 1.   Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate.  If there are assets available, the below creditors will be paid upon the priority they should receive, otherwise they

---

[3] This claim is a duplicate of Claim 5-3 which has been reduced to $0.
[4] This claim is a duplicate of Claim 1 ("POC 1"), and this claim has been reduced to $0.

4813-9907-5805, v. 1

will be treated as an unsecured claim.  The following represent all classes containing Debtor's

secured pre-petition claims and their treatment under this Plan:

| CLASS | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | AMOUNT OWED | TREATMENT |
|---|---|---|---|---|---|
| 1 | THOMAS J. WELSH (Welsh holds first and second mortgage lien claims) | N | N | $2,410,918.77 [5] | Satisfied from the proceeds of the closing of the Avalon Property to Proposed Purchaser or sale to Mr. Welsh as articulated herein or satisfied by the Debtor in full within sixty (60) days of the Effective Date. |
| 2 | CEBV, LLC (POC 3) [6] | N | N | $450,000 [7] | Satisfied from the sales proceeds of the Avalon Property Sale or paid by the Debtor within sixty (60) days of the Effective Date. |
| 3 | Bayview Loan Servicing, LLC (POC 4) | N | N | $187,900 [8] | This claim will be paid at the pre-petition contract rate in accordance with the loan documents and is thus unimpaired. |

## 2.  Priority Non-Tax Claims

Certain priority non-tax claims that are referred to in Code Sections 507(a)(3), (4), (5), (6),

and (7) are entitled to priority treatment. These claims are to be treated as follows:

The Debtor does not have any such claims.

---

[5] Amount due as of December 10, 2020, per Thomas J. Welsh, Jr.'s Objection to Confirmaton of Debtor's Chapter 11 Plan (the "Welsh Objection").  See Doc. No. 152.  Mr. Welsh's claim continues to accrue interest.
[6] CEBV will release its mortgage lien claim upon payment of $450,000. Upon this payment, CEBV releases any and all claims, both secured and unsecured, against the Debtor.  See Doc. 92.
[7] CEBV's proof of claim was $17,441,408.54, however, pursuant to the Stipulation of Settlement between the Debtor and CBEV (Doc. No. 92), the Debtor agreed to pay $450,000 as a secured claim and CBEV agreed to release the balance of any and all claims.  The treatment of this claim does not change under the FirstAmended Plan.
[8] Pursuant to Notice of Mortgage Forbearance, Doc. No. 114, monthly contract rate mortgage payments resumed on October 1, 2020, in the amount of $1,416.11.

4813-9907-5805, v. 1

### 3.  Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code

Section 507(a). These claims are to be treated as follows:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | General Unsecured Claims Filed claims  $21,523,503[9] (reduced to $15,068.79). | N | N | Paid in full on the Effective Date. |

### 4.  Class(es) of Equity Interest Holders

The Debtor will be retaining her equity interest.

### E.    Acceptance or Rejection of Plan

Each impaired class of Creditors with claims against the Debtor' estate shall be entitled to

vote separately to accept or reject the Plan. A class of Creditors shall have accepted the Plan if the

Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in

number of holders of the allowed Claims of such class that have accepted or rejected the Plan. In

the event that any impaired class of Creditors or Interest holders shall fail to accept the Plan in

accordance with Section 1129(a) of the Bankruptcy Code, the Proponent reserves the right to

request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the

Bankruptcy Code.

### F.    Means of Effectuating the Plan

### 1.  Funding for the Plan

---

[9] These claims are  reduced pursuant to the settlement between the Debtor and CEBV, the Debtor's Motion to Expunge Atlantic City Electric Co.'s Claim 2, and IRS reducing its claim to $0. There is approximately $15,068.79 in unsecured claims remaining.

15

The Plan will be funded from the Sale of the Avalon Property.  As noted, the Debtor will sell the Avalon Property to Mr. Weingartner for $3,500,000 by quit claim deed.  The Sale shall be all cash and scheduled to close within thirty (60) days of the Effective Date.[10]  Per Mr. Welsh's Objection, upon information and belief, pursuant to a title search there were judicial/judgment liens against the Avalon Property in the aggregate amount of $19,615.62.  The Debtor has satisfied these judgments.  The Welsh Objection also indicates $17,276.32 due for 2018 taxes.  The Debtor has paid the taxes and has pre-paid the future quarter plus an additional $900.

The Debtor has made significant progress in paying over $500,000 in creditor claims.  The Debtor paid the following claims:[11]

- $53,000 to the Tax Clerk of Avalon, New Jersey for the Avalon Property;

- $250,000 to Drinkwater & Goldstein, LLP - judgment has been satisfied;

- Home insurance for the year for the Avalon Property;

- Bluewater Yacht Companies judgment has been satisfied;

- Higgins Landscaping claim has been satisfied; and

- $229,000 to Bruce Sussman for a Stipulation of Judgment pending in the Superior Court of New Jersey, Law Division, Camden County, bearing docket number CAM-L-001159-20.

In addition, the Internal Revenue Service ("IRS") filed two claims (Claims 1 & 5) against the Debtor.  The claims are duplicates.  Claim 5 was amended and reduced to $0.  Thus, the IRS' claim has been resolved.

Atlantic City Electric Company ("AC Electric") filed a claim against the Debtor in the

---

[10] As set forth above, if Mr. Weingartner does not close within sixty (60) days of the Effective Date, the Debtor has the option of either (1) selling to Mr. Welsh for $2.9 million (as contemplated under the original plan) or (2) paying off Mr. Welsh's and all other creditors' claims within sixty (60) days of the Effective date.
[11] The payments have been funded and made by the Debtor's non-debtor spouse.

4813-9907-5805, v. 1

amount of $4,486.18 (the "Claim").  The Debtor contacted AC Electric and advised  that nothing

was owed on the account.      Thus, on February 10, 2021, the Debtor filed an Objection to AC

Electric's Claim.  See Doc. 164.  Whether the claim is expunged or not, the claim will be satisfied

in full on the Effective Date.

Conveying the Avalon Property to Weingartner will allow the Debtor to reorganize her

affairs by paying her debts  in full.  Mr. Welsh will be paid[12]   from the sales proceeds as a result

of the s Sale to  Mr. Weingartner.   In addition, CEBV will be paid from the proceeds from the

sale.

Substantial prejudice will occur if the automatic stay is not reinstated and the Avalon

Property gets sold at a sheriff's sale.  A sheriff's sale will prejudice all creditors and will not

maximize the value of the Avalon Property.[13]

### 2.  Post-Confirmation Management

 Debtor is an individual so there is no "post-confirmation" management, however, all

property of the estate will re-vest in the Debtor and she will continue to own all property not

previously conveyed by court order or by this plan.

### 3.  Disbursing Agent

The Reorganized Debtor shall act as the disbursing agent for the purpose of making all

distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall

receive no remuneration for distribution services rendered and expenses incurred pursuant to the

Plan.

---

[12] The $53,000 exceeded the amount due and the overage will be applied to the second quarter taxes.  This payment
brought the taxes, water, and sewer current for the Avalon Property.  The Tax Clerk advised today that there is a
pending wire transaction for $4,000 which exceeds the amount due and the remainder will be applied to the third
quarter.
[13] If required, the Debtor will move expediously to reimpose the stay, however, due to Covid-19, foreclosure sales
have been stayed by the courty Sheriff's Office.

4813-9907-5805, v. 1

The Reorganized Debtor shall act as the Debtor's liquidating agent and shall be authorized and obligated, as such, to take any and all actions necessary or appropriate to implement this Plan or wind down the Debtor, including any and all actions necessary to (a) liquidate the Debtor's remaining assets, (b) investigate and prosecute Causes of Action on the Debtor' behalf in the Bankruptcy Court or any other court of competent jurisdiction, (c) defend, protect, and enforce any and all rights and interests of the Debtor, (d) make any and all Distributions required or permitted to be made, (e) file any and all reports, requests for relief, or objections thereto, (f) dissolve the Debtor and otherwise wind down the Debtor and any corporate entity owned by the Debtor including preparation of and filing of final tax returns, (g) file such post-Effective Date reports as may be required under applicable law, (h) pay all statutory fees, (i) object to Claims filed against the Debtor, and (j) pay any and all claims, liabilities, losses, damages, costs, and expenses incurred in connection therewith or as a result thereof, including all fees and expenses of the Plan Administrator's attorneys and other professionals. The Plan Administrator shall be authorized to execute such documents and take such other action as may be necessary to effectuate this Plan and perform his duties as liquidating agent. The Plan Administrator shall be authorized to retain attorneys and other professionals and may incur reasonable fees and expenses in the performance of his duties as the Debtor' liquidating agent, which reasonable fees and expenses shall be paid from the Administrative Reserve.

Upon the Effective Date, the Plan Administrator shall be deemed the sole member of the Debtor for all purposes, with all necessary and appropriate power to act for, on behalf of, and in the name of the Debtor. The Plan Administrator may be removed for cause by order of the Bankruptcy Court following notice and a hearing. As used in this Section, "cause" means a judicial determination that the Plan Administrator has engaged in actual fraud, gross negligence, or willful

18

misconduct, or has otherwise materially and substantially failed to discharge his duties under this Plan, and such material and substantial failure has continued for sixty (60) days following the Plan Administrator's receipt of written notice specifically asserting such failures. The Plan Administrator may also voluntarily resign, upon notice filed with the Bankruptcy Court; provided, however, that no voluntary resignation by the Plan Administrator shall be effective until a successor has been appointed.

## III.

## TREATMENT OF MISCELLANEOUS ITEMS

### A.    Executory Contracts and Unexpired Leases

### 1.  Rejections

The Plan provides that all Executory Contracts and Unexpired Leases shall be assumed, unless expressly rejected. The Order confirming the Plan shall constitute an Order approving the rejection of any and all the leases or contracts except as set forth in paragraph III(A)(1) above.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.  See Disclosure Statement for the specific date.

Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT WAS FEBRUARY 18, 2020.**

Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

4813-9907-5805, v. 1

**B.      Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory commission approval of their rates.

**C.      Retention of Jurisdiction.**

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of

the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the

Plan, and to make such orders as are necessary or appropriate to carry out the provisions of this

Plan and with respect to the following matters:

(a)      To enable the Plan Proponents to consummate the Plan and to resolve any disputes arising therefrom;

(b)      To adjudicate all controversies concerning the classification, estimation or allowance of any Claim herein;

(c)      To make such Orders as are necessary or appropriate to implement the provisions of this Plan;

(d)      To determine the classification, estimation and priority of all claims against the Debtor and to re-examine any Claims which may have been allowed;

(e)      To determine applications for the rejection or assumption of executory contracts or unexpired leases pursuant to the provisions of this Plan which are not determined prior to the Confirmation date and to determine allowance of Claims for damages with respect to rejection of any such executory contracts or unexpired leases within such time as the Court may direct;

(f)      To oversee and issue further appropriate orders respecting disbursement of amounts deposited as may be required by this Plan;

(g)      To conduct hearings on valuation, as necessary, and to determine whether any party in interest is entitled to recover against any Person any Claim, whether arising under Section 506(c) of the Bankruptcy Code, or arising out of a voidable preference, a fraudulent transfer, or otherwise;

(h)      To hear and determine all applications for compensation and other Administrative Expenses;

4813-9907-5805, v. 1

(i)     To hear and determine any and all pending adversary proceedings or contested matters;

(j)     To determine all causes of action which may exist in favor of the Debtor;

(k)     To determine any modification of the Plan after confirmation pursuant to Section 1127 of the Code;

(l)     To enter any order, including injunctions, necessary to establish and enforce the rights and powers of the Debtor under the Plan;

(m)     To enter a final decree pursuant to Rule 3022 of the Bankruptcy Rules;

(n)     To hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of the Plan;

(o)     To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of Bankruptcy Court in the Chapter 11 Case entered on or before the Confirmation Date;

(p)     To hear and determine any and all controversies and disputes arising under, or in connection with, the Plan;

(q)     To hear and determine any and all objections to payments under the Plan;

(r)     To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

(s)     To adjudicate all Claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof;

(t)     To adjudicate all causes of action to recover all assets and properties of the Debtor wherever located;

(u)     To enter any order, including injunctions necessary to enforce the title, rights and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions on such title rights and powers as the Bankruptcy Court may deem necessary or appropriate; and

(v)     To make such orders as are necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting or enforcing the provisions thereof.

In addition, the Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code.

21

If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Debtor or the reorganized Debtor elect to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

**D.    Procedures for Resolving Contested Claims.**

Objections to Claims and interests, except for those Claims more specifically deemed Allowed in the Plan, may be filed by the reorganized Debtor or any party in interest up to and including sixty (60) days following the entry of the Confirmation Order. With respect to disputed Claims or interests, the Disbursing Agent will hold in a separate interest bearing reserve account such funds as would be necessary in order to make the required distribution on the Claim or interest, as listed either in the Debtor' schedules or the filed proof(s) of claim.

**E.    Transfer/Sale of Property is not subject to Realty Transfer Fees or Tax under 11 U.S.C. § 1146(a)**

Pursuant to §1146(a) of Title 11, the "issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 or 1191 of this title, may not be taxed under any law imposing a stamp tax or similar tax.  Accordingly, any transfer to Mr. Weingartner or Mr. Welsh is not subject to any tax.    Such sale/transfer shall be free and clear of liens claims and encumbrances of any kind, with valid liens, to attach to the proceeds of sale.

**F.    Notices under the Plan**

All notices, requests or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are

4813-9907-5805, v. 1

sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to

the Proponent, addressed to:

> Anthony Sodono, III, Esq., and Sari B. Placona, Esq.
> c/o McManimon, Scotland & Baumann, LLC
> 75 Livingston Avenue
> Roseland, New Jersey 07068

## IV.

## EFFECT OF CONFIRMATION OF PLAN

### A.    Discharge

This Plan provides that upon confirmation of the Plan and tendering the payments as set

forth herein, Debtor shall be discharged of liability for payment of debts incurred before

Confirmation, to the extent specified in 11U.S.C.§ 1141. However, any liability imposed by the

Plan will <u>not</u> be discharged. If Confirmation of this Plan does not occur, the Plan shall be deemed

null and void. In such event, nothing contained in this Plan shall be deemed to constitute a waiver

or release of any claims against the Debtor or their estates or any other persons, or to prejudice in

any manner the rights of the Debtor or their estates or any person in any further proceeding

involving the Debtor or their estates. The provisions of this Plan shall be binding upon Debtor, all

Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest

Holders are impaired or whether such parties accept this Plan, upon Confirmation thereof.

Moreover, any judgments docketed against the Debtor or their real properties in the State of New

Jersey and any county or subdivision thereof will be expunged upon the Effective Date of the Plan.

### B.    Release of Claims

Except as otherwise expressly provided for in this Plan, the distributions and rights

afforded in the Plan shall be complete and full satisfaction and release, effective as of the Effective

Date, of all Claims against the Debtor or any of their assets or properties of any nature whatsoever.

4813-9907-5805, v. 1

Commencing on the Effective Date, except as otherwise expressly provided for in this Plan, all Claimants are forever releasing, waiving, and discharging and shall be precluded forever from asserting against the Debtor and her bankruptcy estate fiduciaries and properties any other or further claims, obligations, suits, judgments, liens, encumbrances, damages, debts, rights, causes of action, and liabilities whatsoever arising on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or the Plan, including but not limited to all principal and accrued and unpaid interest on the debts of the Debtor based on any act or omission, transaction or other activity or security instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date, that was or could have been the subject of any Claim, whether or not Allowed; provided, however, that such release, waiver and discharge shall not apply in any respect to any acts or omission that are the result of fraud, gross negligence or willful misconduct by the Debtor from the Petition Date to the Effective Date.

On and after the Effective Date, as to every Claim, every Holder of a Claim shall be precluded from asserting against the Debtor and her bankruptcy estate fiduciaries and its respective assets and/or properties any further Claim based on any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

### C.    Modification of Plan

The Proponent of the Plan may modify the Plan at any time before Confirmation, however, the Court may require a new disclosure statement or re-voting on the Plan if Proponent modifies the Plan before Confirmation.

The Proponent may also seek to modify the Plan at any time after Confirmation so long as (1) the Plan has not been substantially consummated; and (2) the Court authorizes the proposed modification after notice and a hearing.

24

**D.      Revesting of Property in the Debtor**

Except as provided in Section IV.E. hereinafter, and except as provided elsewhere in the Plan, the Confirmation revests the property of the estate in the Debtor.

**E.      Modification of Plan**

The Proponents of the Plan may modify the Plan at any time before Confirmation. However, the Court may require a new disclosure statement or re-voting on the Plan if Proponent modifies the Plan before Confirmation.

The Proponents may also seek to modify the Plan at any time after Confirmation so long as (1) the Plan has not been substantially consummated; and (2) the Court authorizes the proposed modification after notice and a hearing.

**F.      Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing under the Plan. If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only if relief from stay was not previously granted by the Court during this case.

**G.      Post-Confirmation Quarterly Fees**

Quarterly fees pursuant to 28 U.S.C. Section 1930 (a)(6) continue to be payable to the office of the United States trustee post-confirmation until such time as the case is converted dismissed or closed pursuant to a final decree.  Operating reports will continue to be filed quarterly (not monthly) and shall continue until the case was closed.

                                        McMANIMON, SCOTLAND
                                        & BAUMANN, LLC

25

*Counsel to Debtor and Debtor-in-Possession,*
*Rosa Maria Styles*

By:_____/s/ Anthony Sodono, III_____
        ANTHONY SODONO, III

_____/s/ Rosa Maria Styles_____
        ROSA MARIA STYLES

26

# EXHIBIT B

Edward W. Weingartner, III
715 Shagbark Dr.
West Chester, PA 19382

February 18, 2021

Robert and Rosa Schwartz
43 W. 12th St.
Avalon, NJ 08202

Sent via Fedex and certified mail.

Dear Mr. & Mrs. Schwartz,

It was great talking with you last week.  Once again thank you for the tour of your home.  My wife is excited about the design, furnishings and overall pride taken in the maintenance and care of the home.

As we discussed, our offer of $3,500,000, all cash, still stands.  That said, I want to take a moment to recap some of our discussion.

We agree that we will contain the closing to our attorneys and not do a standard closing through a realtor, thereby saving you 6%.

Also, we agree to do a quick claim deed on the property to avoid traditional transfer costs.  Your attorney will have to set up the actual closing to address anything that needs to be paid and settled at the closing table with the funds that I will provide.

Lastly, I have 2 requirements:

First, you have to provide a title that is clear of any liens and/or judgements including but not limited to IRS, taxes, past judgements etc.  Any normal mortgage will be settled at the closing table.

Second, I ask that the next quarter of taxes be paid in advance.  I believe that they are due in May.  Please pay them and provide proof of the payment.

Once we get proof of the clear title as identified above and proof of real estate taxes have been paid, we can schedule a time to close.

Sincerely,

Edward W. Weingartner, III

# EXHIBIT C

**From:** Eleanor Cifaloglio <ecifaloglio@avalonboro.org>
**Sent:** Wednesday, February 17, 2021 10:51 AM
**To:** 'Robert Schwartz' <r.schwartz@msn.com>
**Subject:** redemption block 11.02 lot 9.01 - 43 W 12th Street Avalon, NJ 08202

Good morning Mr. Schwartz. In our account we have an incoming wire pending in the amount of $53,000.00 from your account designated for 43 W 12th Street. The owner of record for this property is your wife, Rosa Styles. The $53,000.00 exceeds the amount due and the balance will be applied to the 2nd quarter. This brings both taxes and water/sewer current, the next amounts due are water/sewer April 1st (currently there is a credit of $239.33 on account 0127678743) and taxes May 1st. The Tax Sale Certificate will be endorsed for cancellation by the lien holder and sent to the tax collector's office. We will then forward the certificate to you for recording with the county. This process will take approximately 30 days to complete.

**Eleanor Cifaloglio, CTC**
Tax Clerk
3100 Dune Dr
Avalon, NJ 08202
609-967-4045
www.avalonboro.net

# EXHIBIT D

**From:** Eleanor Cifaloglio <ecifaloglio@avalonboro.org>
**Sent:** Monday, February 22, 2021 1:58 PM
**To:** 'Robert Schwartz' <r.schwartz@msn.com>
**Subject:** 2nd quarter payment 43 W 12th street

We have a pending wire transaction for $4,000.00. This exceeds the amount due and the remainder will be applied to the 3rd quarter.

Eleanor Cifaloglio, CTC
Tax Clerk
3100 Dune Dr
Avalon, NJ 08202
609-967-4045
www.avalonboro.net

# EXHIBIT E

| | |
|---|---|
| **From:** | Tara L. Magitz <tara@drinkwatergoldsteinlaw.com> |
| **Sent:** | Wednesday, January 13, 2021 12:31 PM |
| **To:** | Anthony Sodono, III |
| **Cc:** | Sari B. Placona; D&G Info |
| **Subject:** | Rosa Styles BK claim |

Anthony and Sari,

Please be advised that I am authorized to make this statement on behalf of the law firm. I can confirm that the law firm of Drinkwater & Goldstein, LLP had a debt with Rosa Styles and the Styles family for work the firm had done for various family members which Rosa had assumed responsibility for payment wise. As of this date, we have settled in full with Robert Schwartz, Rosa Styles' husband, and will not pursue any debt in the bankruptcy. I trust this is satisfactory, but should you require anything additional, please feel free to reach out to me at the office number identified below or 856-244-8214 as I am working from home through this week. Thank you.

Tara

Tara L. Magitz, Esquire
Associate, Drinkwater & Goldstein, LLP
277 White Horse Pike, Suite 200
Atco, NJ 08004
P: (856) 753-5131
F: (856) 753-5132
tara@drinkwatergoldsteinlaw.com

This e-mail and any attachments hereto contain CONFIDENTIAL INFORMATION from DRINKWATER & GOLDSTEIN, LLP, Attorneys-at-Law. It is intended solely for the addressee and access to this message by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or other use of the contents of this transmission is prohibited and may be unlawful. If you received this transmission in error, please notify the sender by telephone at 856-753-5131 and delete the message and any attachments from your system.

# EXHIBIT F

# AI The Ardite Insurance Agency, LLC

## Representing Multiple Auto Insurance Companies

www.arditeins.com

202 S. Blackhorse Pike
Blackwood, NJ  08012

Tel: 856-401-2929
Fax: 888-482-8812
Email: bardite@arditeins.com

Rosa Styles

NJH00002015825

December 29, 2020

Rosa,

Please finds attached your receipt for Home Insurance for 43 12th St Avalon NJ.

Mr Robert Schwartz has paid in full as usual to avoid any monthly bills.  He also realizes savings by doing so.

Please be advised that no premiums are due until 12/14/2021.

If there are any questions or concerns, please call my office.

Regards,

Bryan R Ardite

Links ▾

More Than Just Insurance.

**Plymouth Rock** assurance®

Policy ▾    styles

My Quotes    | All Quotes

Hi Bryan ▾    Contact Us ▾    Site Search    Logo

Rosa Styles  NJH00002015825
Policy Term  12/15/2020 - 12/15/2021
Policy Status: Cancellation Pending
Cancel Payment

Home  >  Search Results  >  Web Pay

### Plymouth Rock Payment Confirmation

CONFIRMATION ID: 13860843

**POLICY INFORMATION**

| | |
|---|---|
| Policy Number | NJH00002015825 |
| First Name | ROSA |
| Last Name | STYLES |
| Address | 43 12TH ST |
| City | Avalon |
| State | NJ |
| Zip | 08202 |

**PAYOR INFORMATION**

| | |
|---|---|
| First Name | ROSA |
| Last Name | STYLES |
| Address | 43 12TH ST |
| City | Avalon |
| State | NJ |
| Zip | 08202 |

**PAYMENT DETAILS**

| | |
|---|---|
| Payment Type | VISA |
| Account Number/Card Number | *****0241 |
| Payment Status | Processed |
| Payment Amount | $3,669.00 |
| Payment Date/Time | 12/28/2020 2:16:59 PM |

I hereby authorize Plymouth Rock to initiate a payment on 12/28/2020 2:16:59 PM for the amount of $3,669.00 to be applied to the account information above. This payment will be debited immediately.

Signature of Account Holder:_____ (Optional)

⊘ Help    🖶 Print    ✉ E-Mail

# EXHIBIT G

| | |
|---|---|
| **From:** | Stan Wilson <swilson@bluewateryachtcompanies.com> |
| **Sent:** | Thursday, February 18, 2021 1:03 PM |
| **To:** | Sari B. Placona |
| **Subject:** | RE: SCHWARTZ-STILES LIEN RELEASE |

Just a quick update.  I received a note from our attorney evidencing that he had made request of the NJ attorney who handled the judgement to make sure both parties were released as originally I believe he had requested only Styles be released.  Anyway, I'm assuming she inquired about payment as he also sent her payment with the same request and offered to cover any additional costs that may be incurred in the final release of both parties.  Hopefully we will receive the releases soon.

Stan

**From:** Sari B. Placona <SPlacona@MSBNJ.COM>
**Sent:** Wednesday, January 6, 2021 10:05 AM
**To:** Stan Wilson <swilson@bluewateryachtcompanies.com>
**Cc:** Robert Schwartz <r.schwartz@msn.com>
**Subject:** RE: SCHWARTZ-STILES LIEN RELEASE

Stan

Any update on this as we have a court hearing next week and would love to show this judgment being satisfied.

Thank you.

**Sari B. Placona, Esq.**
**McManimon, Scotland & Baumann, LLC**
75 Livingston Avenue | Suite 201 | Roseland, NJ 07068
**Direct Dial: 973-721-5030**
**Email: splacona@msbnj.com**
**Website**

**Connect with MS&B on LinkedIn | Twitter | Instagram**

*"Whatever you do, do it with all your might.  Work at it, early and late, in season and out of season, not leaving a stone unturned, and never deferring for a single hour that which can be done just as well now."*

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy, or disclose to anyone the message or any information contained in the message . If you have received the message in error, please advise the sender by reply e-mail or contact the sender at McManimon, Scotland & Baumann, LLC by phone at (973) 622-1800 and delete the message. Thank you very much

**From:** Stan Wilson <swilson@bluewateryachtcompanies.com>
**Sent:** Friday, December 11, 2020 10:39 AM
**To:** Sari B. Placona <SPlacona@MSBNJ.COM>
**Subject:** RE: SCHWARTZ-STILES LIEN RELEASE

Sorry for the delay….have had difficulty locating the attorney  who handled this for us.  Now that we have accomplished that, he has agreed to contact his NJ counterpart to get this done.  He is asking if we only want the judgement released against Mr. Schwartz – or does it need to include Rosa Styles as well?  Do you have any input on this question?  I have prepared a check for the attorney in this matter so I anticipate this will be handled expeditiously .

Thank You,


*Stan Wilson*
**Controller**
**Bluewater Yacht Companies**
1 Marina Road
Hampton, VA  23669
757.723.0793 ext. 410
swilson@bluewateryachtcompanies.com

---

**From:** Sari B. Placona <SPlacona@MSBNJ.COM>
**Sent:** Thursday, December 3, 2020 12:25 PM
**To:** Karin Chrisman <kchrisman@bluewateryachtcompanies.com>; Robert <r.schwartz@msn.com>
**Cc:** Anthony Sodono, III <ASodono@MSBNJ.COM>; Stan Wilson <swilson@bluewateryachtcompanies.com>
**Subject:** RE: SCHWARTZ-STILES LIEN RELEASE

Hi Stan

Please let me know if a warrant of satisfaction can be filed in relation to this.

Thanks much!

**Sari B. Placona, Esq.**
**McManimon, Scotland & Baumann, LLC**
75 Livingston Avenue | Suite 201 | Roseland, NJ 07068
**Direct Dial: 973-721-5030**
**Email: splacona@msbnj.com**
**Website**

**Connect with MS&B on LinkedIn | Twitter | Instagram**


*"Whatever you do, do it with all your might.  Work at it, early and late, in season and out of season, not leaving a stone unturned, and never deferring for a single hour that which can be done just as well now."*


This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy, or disclose to anyone the message or any information contained in the message . If you have received the message in error, please advise the sender by reply e-mail or contact the sender at McManimon, Scotland & Baumann, LLC by phone at (973) 622-1800 and delete the message. Thank you very much

---

**From:** Karin Chrisman <kchrisman@bluewateryachtcompanies.com>
**Sent:** Thursday, December 3, 2020 12:24 PM
**To:** Sari B. Placona <SPlacona@MSBNJ.COM>; Robert <r.schwartz@msn.com>

**Cc:** Anthony Sodono, III <ASodono@MSBNJ.COM>; Stan Wilson <swilson@bluewateryachtcompanies.com>
**Subject:** RE: SCHWARTZ-STILES LIEN RELEASE

Sari,
I am going to refer you to our controller Stan Wilson – he is copied on this email and he will be the contact for you on this going forward.
Thanks so much, have a great day.
Karin







Karin Chrisman
SERVICE COORDINATOR

25 Marina Rd, Hampton, Virginia, 23669

Email: kchrisman@bluewateryachtcompanies.com

Tel: 757.723.0793 (option 2)
Fax: 757.723.5340

---

**From:** Sari B. Placona <SPlacona@MSBNJ.COM>
**Sent:** Thursday, December 3, 2020 12:21 PM
**To:** Robert <r.schwartz@msn.com>; Karin Chrisman <kchrisman@bluewateryachtcompanies.com>
**Cc:** Anthony Sodono, III <ASodono@MSBNJ.COM>
**Subject:** RE: SCHWARTZ-STILES LIEN RELEASE

HI Karin

Following up.  Thanks

**Sari B. Placona, Esq.**
**McManimon, Scotland & Baumann, LLC**
75 Livingston Avenue | Suite 201 | Roseland, NJ 07068
**Direct Dial: 973-721-5030**
**Email: splacona@msbnj.com**
**Website**

**Connect with MS&B on LinkedIn | Twitter | Instagram**

*"Whatever you do, do it with all your might.  Work at it, early and late, in season and out of season, not leaving a stone unturned, and never deferring for a single hour that which can be done just as well now."*

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy, or disclose to anyone the message or any information contained in the message . If you have received the message in error, please advise the sender by reply e-mail or contact the sender at McManimon, Scotland & Baumann, LLC by phone at (973) 622-1800 and delete the message. Thank you very much

---

**From:** Sari B. Placona
**Sent:** Thursday, November 12, 2020 11:33 AM
**To:** Robert <r.schwartz@msn.com>; Karin Chrisman <kchrisman@bluewateryachtcompanies.com>
**Cc:** Anthony Sodono, III <ASodono@MSBNJ.COM>
**Subject:** RE: SCHWARTZ-STILES LIEN RELEASE

Karin

Hi. We need a warrant of satisfaction filed that evidences the judgment was satisfied and/or released.

Thanks.

## Sari B. Placona, Esq.
**McManimon, Scotland & Baumann, LLC**
75 Livingston Avenue | Suite 201 | Roseland, NJ 07068
**Direct Dial: 973-721-5030**
**Email: splacona@msbnj.com**
Website

**Connect with MS&B on LinkedIn | Twitter | Instagram**

*"Whatever you do, do it with all your might.  Work at it, early and late, in season and out of season, not leaving a stone unturned, and never deferring for a single hour that which can be done just as well now."*

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy, or disclose to anyone the message or any information contained in the message . If you have received the message in error, please advise the sender by reply e-mail or contact the sender at McManimon, Scotland & Baumann, LLC by phone at (973) 622-1800 and delete the message. Thank you very much

**From:** Robert <r.schwartz@msn.com>
**Sent:** Thursday, November 12, 2020 11:27 AM
**To:** Sari B. Placona <SPlacona@MSBNJ.COM>
**Subject:** Fwd: SCHWARTZ-STILES LIEN RELEASE

Sent on a Boost Samsung Galaxy Note® 3

-------- Original message --------
From: Karin Chrisman <kchrisman@bluewateryachtcompanies.com>
Date: 11/12/2020 11:04 AM (GMT-05:00)
To: r.schwartz@msn.com
Cc: Stan Wilson <swilson@bluewateryachtcompanies.com>
Subject: SCHWARTZ-STILES LIEN RELEASE

Robert,

Per our phone conversation this morning, please have your lawyer send us an email with what it is exactly they need from Bluewater to remove the item (s) from your credit report.

Thanks so much,

Karin

# EXHIBIT H



*SINCE 1968*

# BLUEWATER
## Yacht Sales

**One Marina Road * Hampton, Virginia 23669 * (757) 723-0793 * Fax (757) 723-3320**

March 22, 2019

Mr. Robert Schwartz
Agent for Rosa Styles
277 White Horse Pike
Suite 200
Atco, NJ  08004

Mr. Schwartz,

This letter serves as verification that all claims and liens placed against the vessel 'SEA CURE' by Bluewater Yacht Sales, LC have been satisfied and are hereby released.  A copy of your most recent account statement is attached reflecting the recent payment in full of the original work order charges and the charge-off all other associated fees and costs – leaving a zero balance.

Thank You,

*Earle Hall*

Earle Hall
Member-Manager



1 Marina Road
Hampton, VA 23669
757-723-0793



Page 1

# STATEMENT

| ACCOUNT NO. | DATE |
|---|---|
| 05460 | 03/22/19 |

ROBERT SCHWARTZ
AGENT FOR: ROSA STYLES
277 WHITE HORSE PIKE
SUITE 200
ATCO, NJ 08004

AMOUNT
ENCLOSED $ _____

| DATE | REFERENCE NO. | DESCRIPTION | CHARGES | PAYMENTS | BALANCE |
|---|---|---|---|---|---|
| 06/12/13 | 800990 | Elec 05/26/13-06/12/13 | 9.50 | | 9.50 |
| | | 33198 - 33103 X 0.10000 | | | |
| 06/28/13 | 956905 | 531936 : WO Billing | 5,524.13 | | 5,533.63 |
| 10/14/13 | 958724 | HAMPTON ROADS DOCUMENT SVC | 300.00 | | 5,833.63 |
| | | LIEN | | | |
| 11/19/13 | 959415 | QUADROS & ASSOCIATES INV | 100.00 | | 5,933.63 |
| | | 11/12/13 | | | |
| 03/03/15 | 966212 | Late Fee | 99.68 | | 6,033.31 |
| 04/03/15 | 966610 | Late Fee | 117.16 | | 6,150.47 |
| 05/03/15 | 966965 | Late Fee | 118.89 | | 6,269.36 |
| 03/18/19 | 917045 | WRITE OFF PER SW | | 719.36 | 5,550.00 |
| 03/19/19 | 011505 | 3/15/2019 WIRE WO 531936 | | 5,550.00 | 0.00 |

| CURRENT | 30 DAYS | 60 DAYS | 90 DAYS | AMOUNT DUE |
|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |

**DUE UPON RECEIPT **FINANCE CHARGE 1.5% ON PAST DUE

*Thank You*



**U.S. Department of
Homeland Security**

**United States
Coast Guard**

Director
National Vessel Documentation Center

792 T. J. Jackson Drive
Falling Waters, WV  25419
Phone: (800) 799-8362
Fax: 304-271-2405

**June 15, 2020**

**BLUE WATER YACHT SALES LC
ONE MARINA ROAD
HAMPTON VA 23669**

**Regarding your recent submission to the National Vessel Documentation Center**

This cover letter with enclosure(s) is sent in response to a submission made to this office.  If you
have any questions, please contact the National Vessel Documentation Center at the number
shown above.

**Enclosures:**

(1)  Satisfaction      O/N: 992091          1 PAGE(S)

**TOTAL:**                                              2 PAGE(S) (including cover page)

1458499                    Reference Number: 98484617                    Page 1    **12**

FAXED Batch #: 60514600 / Doc #: 1 / File Date: 3/29/2019 10:39:00 AM

## SATISFACTION OR RELEASE OF MORTGAGE, CLAIM OF LIEN OR PREFERRED MORTAGE

Vessel Name and Official Number:
__Lucky Duck   O/N 992091__

Name of Mortgagor (if any): _____

Name of Mortgagee OR Claimant: __Bluewater Yacht Sales LC__

Amount of Mortgage or Claim of Lien: __$6,083.87__

Recorded in Book No./Batch No. __15206200__ . Page No./Document ID __3__

Mortgagee or Claimant requests that the indebtedness referenced above be discharged from the record of subject vessel.

Signature _____ Date __3-27-19__

Print name and title, if any, of person signing:

_____

STATE OF __Virginia__ COUNTY or JUDICIAL DISTRICT __Hampton__

On this date the individual named above, in his/her stated capacity, personally appeared before me and acknowledged that this instrument was signed as a free and voluntary act and deed for the uses and purposes therein mentioned

__02-28-2019__
Date

_____
Signature of NOTARY PUBLIC

_____
Date Commission Expires

AFFIX
NOTARY SEAL
IF REQUIRED

*(notary seal: LISA MARIE KEENE, NOTARY PUBLIC, REG # 7229166, MY COMMISSION EXPIRES 7/31/2022, COMMONWEALTH OF VIRGINIA)*

*(handwritten right margin: Boat = Jen Cut, Robert Schwartz, #5460 / Record payment 3/19/19)*

**SAMPLE**
Revised (12/2017)

Visit our homepage at: http://www.uscg.mil/nvdc

# EXHIBIT I

MO-50 Rev2 9/09 M 6293004-A

TD Bank

PERSONAL
MONEY ORDER

824-0133
112

961/9795=8

PAY TO THE
ORDER OF Chester A. Luszcz Esq.

DATE: 07/14/2020

*FIVE HUNDRED AND 00/100*

$500.00

Settled for Rosa Styles
Case# 19-32881-ABA
(Higgins Landscaping)

NON NEGOTIABLE

61 Holiday Rd

CUSTOMER COPY

PURCHASER'S SIGNATURE

PURCHASER'S ADDRESS

NOT TO EXCEED $1,000.00

## MUTUAL GENERAL RELEASE

This Mutual General Release, dated this 14ᵗʰ day of ___JULY___, 2020 is by and between John Higgins, LLC d/b/a Higgins Landscaping ("Higgins"), and Robert Schwartz ("Schwartz").

WHEREAS, Higgins and Schwartz desire to enter into this Mutual General Release to provide for a payment to Higgins in full and final settlement and discharge of all claims which the parties have against each other upon the terms and conditions set forth herein.

WHEREAS, Higgins and Schwartz desire to resolve and settle all claims and controversies among them (the "dispute") upon all the terms and conditions set forth in this Mutual General Release.

NOW THEREFORE, in consideration of the mutual promises and other good and valuable consideration set forth herein, which the parties hereto agree as good and valuable consideration for this general mutual release, and intending to be legally bound, it is hereby agreed as follows:

Schwartz shall pay to Higgins the sum of Six Hundred Dollars ($600.00) (The "Settlement Amount") upon signature of this Release. This Settlement Amount is to be paid by July 17, 2020.

1.      Once Schwartz has paid the Settlement Amount to Higgins, Higgins in its own right and for itself, its heirs, executors, administrators, successors, representatives and assigns, for and in consideration of the total sum of the Settlement Amount, the receipt whereof is hereby acknowledged, does hereby forever remise, release, quitclaim and forever discharge Schwartz, his heirs, executors, administrators, successors, successors of interest, representatives and assigns, of and from any and all manner of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands, of any sort, whether in law or equity which Higgins has had, now has, or which it and its heirs, executors, administrators, successors, representatives and assigns hereafter can, shall or may have against Schwartz, his heirs, executors, successors, administrators, successors in interest, representatives and assigns, for or by reason or any matter, cause or thing whatsoever resulting from or to result from or arising out of, without any limitation, any claims or claim, damage or losses asserted or which might have been asserted, directly or indirectly, particularly from any and all claims arising out of the claim for an invoice, dated 11/30/2018, in the amount of $2,263.18, for the property located at: 61 Hartford Road, Sewell, NJ 08080.

[ 1 of 3 ]

2.      Once Schwartz has received this signed Mutual General Release from Higgins, Schwartz, in his own right and for himself, his heirs, executors, administrators, successors, representatives and assigns, for and in consideration of the total sum of the Settlement Amount, the receipt whereof is hereby acknowledged, does hereby forever remise, release, quitclaim and forever discharge Higgins, and its heirs, executors, administrators, successors, successors in interest, representatives and assigns, of and from any and all manner of actions and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands, of any sort, whether in law or equity which Schwartz has had, now has, or which his heirs, executors, administrators, successors, representatives and assigns hereafter can, shall or may have against Higgins, its heirs, executors, successors, administrators, successors in interest, representatives and assigns, for or by reason of any matter, cause or thing whatsoever resulting from or to result from or arising out of without any limitation, any claims or claim, damage or losses asserted or which might have been asserted, directly or indirectly, particularly from any and all claims arising out of the claim for an invoice, dated 11/30/2018, in the amount of $2,263.18, for the property located at: 61 Hartford Road, Sewell, NJ 08080.

3.      It is expressly understood and agreed that this settlement is a compromise of a disputed claim, that Higgins's acceptance of the Settlement Amount is in full accord and satisfaction of the disputed claims, that the payment made is not to be construed as an admission or evidence of any alleged liability or wrongdoing on the part of Schwartz, and that both parties intend merely to avoid litigation and buy their peace.

4.      The payment of the Settlement Amount, as set forth above, is the full consideration that Higgins is to receive; and the execution of this Mutual General Release is made with full knowledge that this Mutual General Release covers all possible claims, direct or indirect, against Higgins and against Schwartz, their respective employees, agents, heirs, executors, administrators, successors, successors in interest, representatives and assigns, of any kind whatsoever.

5.      The parties, Higgins and Schwartz, agree not to directly or indirectly through a third party engage in any conduct or make any communication (public or private) that disparages the other party, or its representatives, and Chester A. Luszcz, Esquire, in any way. Such communications include, but are not limited to: publishing, posting, printing, disseminating, or otherwise making such disparaging statements on or through the internet, in any blog, or through any other form of social media. The parties further agree not to solicit or encourage, directly or indirectly, any such statements, comments, or communications by any third-party.

6.      The parties represent and warrant that they have read and understand the terms of this Mutual General Release, that they have been represented by counsel with respect to this Mutual General Release, and all matters covered by and related to it, that

[ 2 of 3 ]

they have been fully advised by counsel with respect to their rights and execution of this Mutual General Release, and that the parties have entered into this Mutual General Release for reasons of their own and not based upon the representations of any party hereto, except as contained in this Mutual General Release.

The undersigned covenant that the execution, delivery and performance of this Agreement  constitutes the legal, valid, and binding acts of the parties, executed by duly authorized representatives of each and every party.

**IN WITNESS WHEREOF,**  and intending to be legally bound hereby and to bind their heirs, executors, administrators, successors, representatives and assigns, this Mutual General Release is hereby executed this __14th__ day of __July__, 2020.

Signed, Sealed and Delivered
in the Presence of :

_____
                                    WITNESS

_____
                                    Robert Schwartz

                                    Dated:

_Michele L. Long_
                                    WITNESS

BY: _Chester A. Luszcz_
     Chester A. Luszcz, Esquire
     Attorney for John Higgins, LLC

     Dated: July 14, 2020

[ 3 of 3 ]