UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

**McMANIMON, SCOTLAND & BAUMANN, LLC**

75 Livingston Avenue
Roseland, NJ 07068
(973) 622-1800
Anthony Sodono, III (asodono@msbnj.com)
Sari B. Placona (splacona@msbnj.com)
*Attorneys for Debtor and Debtor-in-Possession,*
*Rosa Maria Styles*

Order Filed on March 18, 2021
by Clerk
U.S. Bankruptcy Court
District of New Jersey

In re:

ROSA MARIA STYLES,

                    Debtor.

Chapter 11

Case No. 19-32881 (ABA)

Honorable Andrew B. Altenburg, Jr., U.S.B.J

Confirmation Hearing and Time:
March 11, 2021 at 1:00 p.m.

## ORDER CONFIRMING FIRST AMENDED
## CHAPTER 11 PLAN OF REORGANIZATION

The relief set forth on the following pages, numbered two (2) through six (6), is hereby

**ORDERED**.

**DATED: March 18, 2021**

Honorable Andrew B. Altenburg, Jr.
United States Bankruptcy Court

Rosa Maria Styles, Chapter 11 debtor (the "Debtor"), by and through her attorneys, McManimon, Scotland & Bauman, LLC, upon the filing of a *First Amended Plan of Reorganization* [ECF 165] (the "Plan") at or in connection with the hearing on confirmation thereof (the "Confirmation Hearing") or pursuant to the terms of this order confirming the Plan (the "Confirmation Order"); and upon the *Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code Describing Chapter 11 Plan Proposed by the Debtor-in-Possession* [ECF 131] (the "Disclosure Statement"); and upon the record of the hearing before the Bankruptcy Court, whereupon the Bankruptcy Court approved the Disclosure Statement and subsequently entered the *Order Approving Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Plan, Combined with Notice Thereof* (the "Disclosure Statement Order") [ECF 147]; and on October 27, 2020, the Court conditionally approved the Debtor's Disclosure Statement, and the Bankruptcy Court, through the Disclosure Statement Order, having, *inter alia*, (i) authorized the Debtor to solicit acceptances or rejections of the Plan, as modified; (ii) set the deadline for objections to the Plan and voting thereon; and (iii) scheduled the Confirmation Hearing, (as adjourned, to commence on March 11, 2021); and the Confirmation Hearing having been conducted on March 11, 2021; and it appearing that due notice of the Confirmation Hearing has been given to holders of Claims against the Debtor and all other parties-in-interest in accordance with the Disclosure Statement Order, the Bankruptcy Code and the Bankruptcy Rules; and a Certification of Service having been filed by the Debtor attesting to the mailing to the parties identified therein of the Plan, Disclosure Statement, and the Ballot, in accordance with the Disclosure Statement Order; and upon the filing of a *Certification of Ballots* dated March 8, 2021 [ECF 175] (the "Certificate of Ballots"); and no objections having been filed to the Plan and upon the *Certification of Rosa Maria Styles, Pursuant to Bankruptcy Code, 1129(a) and (b) in Support*

*of Confirmation of the Debtor's First Amended Chapter 11 Plan of Reorganization*, dated March 8, 2021 [ECF 174] (the "Styles Declaration"); and any objections having been withdrawn or overruled; and the Bankruptcy Court having reviewed the Plan, Disclosure Statement,  Disclosure Statement Order,  Certificate of Ballots, Certification of Service,  Styles Declaration, Certification of Robert Schwartz, the testimony provided at the Confirmation Hearing, and the arguments of counsel made at the Confirmation Hearing; and upon the entire record of the Debtor's Chapter 11 Case, including all exhibits introduced into evidence at the Confirmation Hearing; and the Bankruptcy Court having taken judicial notice of the papers and pleadings on file in the Chapter 11 Case; and after due deliberation and it having been determined after hearing on notice that the requirements set forth in 11 U.S.C. §1129(a) have been satisfied;

**IT IS ORDERED, ADJUDGED AND DECREED THAT**:

1.      The Plan [ECF 165] filed by the Debtor and annexed  as **Exhibit A**, and as amended and modified herein, be and hereby is confirmed in accordance with, among other sections, the applicable provisions of sections 1129(a) and 1129(b) *provided*, *however*, that if there is any conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.  The terms of the Plan are an integral part of this Confirmation Order and hereby are incorporated herein by reference and "So Ordered" in their entirety.

2.      Article II. F. 3. is deleted and replaced with the following:

   The Reorganized Debtor shall act as the Disbursing Agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall receive no remuneration for distribution services rendered and expenses incurred pursuant to the Plan.

3.      Article IV. A. is deleted and replaced with the following:

   This Plan provides that upon confirmation of the Plan and tendering the payments as set forth herein, Debtor shall be discharged of liability for payment of debts incurred before Confirmation, to the extent specified in 11 U.S.C.§ 1141.  However,

4837-8476-3361, v. 1

any liability imposed by the Plan will not be discharged. Pursuant to 11 U.S.C. § 1141(d)(5), confirmation does not discharge any debt provided for in the Plan until the court grants a discharge upon completion of all payments under the Plan. If Confirmation of this Plan does not occur, the Plan shall be deemed null and void. In such event, nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims against the Debtor or their estates or any other persons, or to prejudice in any manner the rights of the Debtor or their estates or any person in any further proceeding involving the Debtor or their estates. The provisions of this Plan shall be binding upon Debtor, all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest Holders are impaired or whether such parties accept this Plan, upon Confirmation thereof. Moreover, any judgments docketed against the Debtor or their real properties in the State of New Jersey and any county or subdivision thereof will be expunged upon the Effective Date of the Plan.

4.      Article IV. B. is deleted and replaced with the following language:

Except as otherwise expressly provided for in this Plan, the distributions and rights afforded in the Plan shall be complete and full satisfaction and release, effective as of the Effective Date, of all Claims against the Debtor or any of her assets or properties of any nature whatsoever. Commencing on the Effective Date, except as otherwise expressly provided for in this Plan, all Claimants are forever releasing, waiving, and discharging and shall be precluded forever from asserting against the Debtor and properties any other or further claims, obligations, suits, judgments, liens, encumbrances, damages, debts, rights, causes of action, and liabilities whatsoever arising on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or the Plan, including but not limited to all principal and accrued and unpaid interest on the debts of the Debtor based on any act or omission, transaction or other activity or security instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date, that was or could have been the subject of any Claim, whether or not Allowed; provided, however, that such release, waiver and discharge shall not apply in any respect to any acts or omission that are the result of fraud, gross negligence or willful misconduct by the Debtor from the Petition Date to the Effective Date.

On and after the Effective Date, as to every Claim, every Holder of a Claim shall be precluded from asserting against the Debtor and her respective assets and/or properties any further Claim based on any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

Neither the Debtor nor any of her respective estate professionals shall have or incur any liability to any holder of a Claim for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan or the Administration of the Plan or the property to be distributed under the Plan, except for fraud, willful misconduct or gross

negligence, and, in all respects, the Debtor and her respective estate professionals shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

5.      The Plan satisfies section 1125 and 1127 of the Bankruptcy Code without the need for re-solicitation.

6.      The treatment of Claims and interests as provided in the Plan is approved.

7.      If any objection to confirmation of the Plan has not been withdrawn prior to entry of this Confirmation Order, all such objections, including the Objections, are hereby overruled.

8.      Immediately upon the entry of the Confirmation Order, the Plan and this Confirmation Order shall be binding upon and inure to the benefit of the Debtor, any heirs, executors, administrators, successors and assigns thereof, and all holders of Claims or interests, and their respective successors and assigns, whether or not they voted to accept the Plan.

9.      Failure to specifically include or reference particular sections or provisions of the Plan or any related agreement in this Confirmation Order shall not diminish or impair the effectiveness of such sections or provisions, it being the intent of the Bankruptcy Court that the Plan be confirmed and such provisions and related agreements be approved in their entirety.

10.      This Order shall not be subject to a stay pursuant to Bankruptcy Rule 3020(e).

11.      The Court shall retain exclusive jurisdiction over this reorganization case, including exclusive jurisdiction over all controversies, disputes, and suits which may arise in connection with the interpretation or enforcement of the Plan and this Confirmation Order or in connection with the enforcement of remedies under the Plan and this Confirmation Order.

12.      The transfer/sale of real property located at 43 W. 12th Street, Avalon, New Jersey (the "Avalon Property"), to Edward Weingartner or Thomas Welsh, be and hereby is transferred free and clear of liens, claims, and encumbrances of any kind with valid liens, claims and

4837-8476-3361, v. 1

encumbrances to attach to the proceeds of sale and free of any tax imposing a stamp, transfer or similar tax under Section 1146(a) of the Bankruptcy Code.  This order can be filed with any State of New Jersey recording office and such recording office shall remove and cancel any judgment or liens of record on the Avalon Property.

13.    As a modification and clarification of Plan terms, by July 15, 2021, the Avalon Property must be sold to Edward Weingartner or Thomas Welsh, or the Debtor must satisfy all debts in her Plan.   If the Avalon Property is not sold by July 15, 2021, to Edward Weingartner, or the Debtor has not satisfied all debts in her Plan, Thomas Welsh shall purchase the Avalon Property for $3 million.  The Debtor is obligated to cooperate in facilitating the sale to Mr. Welsh.  If the Debtor does not cooperate, Thomas Welsh shall list the Avalon Property for sheriff's sale.

14.    If Mr. Welsh lists the Avalon Property for sheriff sale as set forth in the preceding paragraph, Debtor shall make no attempts to reinstate the bankruptcy stay, file a new bankruptcy or take any other action to stop the sheriff sale other than payment in full to Mr. Welsh.

15.    Thomas Welsh's claim shall include interest and attorney's fee until the date he is paid ("Lien Claim Amount").  If he is not paid by July 15, 2021, and he purchases the Avalon Property for $3 million, the purchase price shall be satisfied by (1) Mr. Welsh's bidding his Lien Claim Amount, and (2) the difference between his Lien Claim Amount and $3 million shall be paid to the estate.

16.    CBEV shall be paid $450,000 from the sale of the Avalon Property or by payment from the Debtor.

4837-8476-3361, v. 1

# Exhibit "A"

**McMANIMON, SCOTLAND & BAUMANN, LLC**
75 Livingston Avenue, Second Floor
Roseland, NJ 07068
(973) 622-1800
Anthony Sodono, III, Esq. (asodono@msbnj.com)
Sari B. Placona, Esq. (splacona@msbnj.com)
*Attorneys for Debtor and Debtor-in-Possession, Rosa Maria Styles*

| | |
|---|---|
| In re:<br><br>ROSA MARIA STYLES,<br><br>       Debtor. | Chapter 11<br><br>Case No. 19-32881 (ABA)<br><br>Honorable Andrew B. Altenburg, Jr., U.S.B.J. |

## DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN OF

## REORGANIZATION

Rosa Maria Styles, Debtor and Debtor-in-Possession/Plan Proponent (the "Debtor") respectfully submits her First Amended Plan of Reorganization pursuant to Chapter 11, Title 11 of the United States Code ("First Amended Plan" or "Plan")).  *This First Amended Plan supersedes the Debtor's original plan of reorganization, however, it **does not** change the distribution to creditors.*

The original plan called for a sale of the Avalon Property (defined herein) for $2.9 million to Thomas J. Welsh, Jr. ("Mr. Welsh").   The Debtor recently found another buyer for $3.5 million; therefor this Plan is being amended to reflect the sale to the buyer with certain alternative proposals as set forth herein.   This Plan also discloses that the Debtor has satisfied over $500,000 in creditors' claims already and has pre-paid real estate taxes.

**McMANIMON, SCOTLAND & BAUMANN, LLC**
*Counsel to Debtor and Debtor-in-Possession,*
*Rosa Maria Styles*
By:    /s/ Anthony Sodono, III
       ANTHONY SODONO, III

       /s/ Rosa Maria Styles
       ROSA MARIA STYLES

Dated: February 23, 2021

# TABLE OF CONTENTS

**PAGE**

I. ...................................................................................................................................... 4

INTRODUCTION ............................................................................................................. 4

II. .................................................................................................................................... 5

CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..................... 5

    A.   General Overview ................................................................................................ 5

    B.   Definitions............................................................................................................ 5

    C.   Unclassified Claims ........................................................................................... 11

        1.   Administrative Expenses and Fees ............................................................ 11

        2.   Priority Tax Claims ................................................................................... 13

    D.   Classified Claims and Interests ......................................................................... 13

        1.   Classes of Secured Claims ........................................................................ 13

        2.   Priority Non-Tax Claims............................................................................ 14

        3.   Class of General Unsecured Claims........................................................... 15

        4.   Class(es) of Equity Interest Holders ......................................................... 15

    E.   Acceptance or Rejection of Plan ....................................................................... 15

    F.   Means of Effectuating the Plan ......................................................................... 15

        1.   Funding for the Plan.................................................................................. 15

        2.   Post-Confirmation Management ................................................................ 17

        3.   Disbursing Agent ...................................................................................... 17

III. .................................................................................................................................. 19

TREATMENT OF MISCELLANEOUS ITEMS .............................................................. 19

    A.   Executory Contracts and Unexpired Leases ...................................................... 19

        1.   Rejections.................................................................................................. 19

    B.   Changes in Rates Subject to Regulatory Commission Approval........................ 20

    C.   Retention of Jurisdiction. ................................................................................... 20

    D.   Procedures for Resolving Contested Claims....................................................... 22

    E.   Transfer/Sale of Property is not subject to Realty Transfer Fees or Tax under 11 U.S.C. § 1146(a) 22

    F.   Notices under the Plan ....................................................................................... 22

IV. ................................................................................................................................... 23

EFFECT OF CONFIRMATION OF PLAN .................................................................... 23

    A.   Discharge ........................................................................................................... 23

    B.   Release of Claims .............................................................................................. 23

    C.   Modification of Plan .......................................................................................... 24

    D.   Revesting of Property in the Debtor ................................................................... 25

    E.   Modification of Plan .......................................................................................... 25

F.    Post-Confirmation Conversion/Dismissal.......................................................................... 25

4813-9907-5805, v. 1

## I.

## INTRODUCTION

Rosa Maria Styles is the Debtor in this Chapter 11 bankruptcy case. On December 9, 2019, the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 et seq. This document is the First Amended Plan proposed by the Debtor as the plan proponent. Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the United States Bankruptcy Court for the District of New Jersey (the "Court"), and which is provided to help you understand the Plan.

This is a reorganizing plan. In other words, the plan proponent seeks to accomplish payments under the Plan by satisfying Administrative Expense Claims *in full* on the Effective Date or as otherwise agreed by holders of allowed administrative claims, satisfying secured and unsecured creditors by one of three alternatives as follows: (1) selling a Debtor owned asset, i.e., real property located in Avalon, New Jersey ("Avalon Property") to Edward W. Weingartner, III ("Mr. Weingartner" or the "Proposed Purchaser") for $3,500,000 (the "Sale") as explained more fully herein, or (2) if Mr. Weingartner does not close within sixty (60) days of the Effective Date (defined herein), the Avalon Property will be sold to Mr. Welsh for $2.9 million (as contemplated in the original plan), or (3) the Debtor has the option of not closing any sale and paying all creditors in full within sixty (60) days of the Effective Date. In sum, any of the alternatives provides for payment in full to creditors The primary secured creditor on the Avalon Property is Mr. Welsh who is owed approximately $2.4 million as of December 2020. Mr. Welsh enjoys a duly perfected first mortgage on the Avalon Property. Mr Welsh shall be paid in full from the proceeds of the Sale

The Effective Date of the proposed Plan is the first day of the month following the date

which is thirty (30) days after the date on which the Confirmation Order becomes a Final Order

("Effective Date").

## II.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    General Overview

As required by the Bankruptcy Code, the Plan classifies claims and interests in various

classes according to their right to priority of payments as provided in the Bankruptcy Code. The

Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides

the treatment each class will receive under the Plan.

### B.    Definitions

**Scope of Definitions.** For purposes of this Plan, except as expressly otherwise provided or unless

the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings

assigned to them in this Section of the Plan. In all references herein to any parties' persons,

entities, or corporations, the use of any particular gender or the plural or singular number is

intended to include the appropriate gender or number as the text may require.

**1.**    **Administrative Expense** shall mean any cost or expense of administration of the Chapter

11 case allowable under Section 507(a) of the Bankruptcy Code, including, without

limitation, any actual and necessary expenses of preserving the estate of the Debtor, any

actual and necessary expense of operating the businesses of the Debtor, any indebtedness

or obligation incurred or assumed by the Debtor in connection with the conduct of its

business or for the acquisition or lease of property or the rendition of services to the Debtor,

all allowances of compensation and reimbursement of expenses, any fees or charges

5

assessed against the estate of any Debtor under Chapter 123, Title 28, of the United States Code, and the reasonable fees and expenses incurred by the Proponents in connection with the proposal and confirmation of this Plan.

**2.** **Allowed** when used as an adjective preceding the words "Claims" or "Equity Interest", shall mean any Claim against or Equity Interests of the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim or Equity Interest against such Debtor, or, if no proof of claim or Equity Interest is filed, which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Interest" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

**3.** **Allowed Administrative Expense** shall mean any Administrative Expense allowed under Section 507(a)(1) of the Bankruptcy Code.

**4.** **Allowed Unsecured Claim** shall mean an Unsecured Claim that is or becomes an Allowed Claim.

**5.** **Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code.

6

4813-9907-5805, v. 1

**6.**      **Bankruptcy Court** shall mean the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

**7.**      **Bankruptcy Rules** shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

**8.**      **Business Day** means and refers to any day except Saturday, Sunday, and any other day on which commercial banks in New Jersey are authorized by law to close.

**9.**      **Chapter 11 Case** shall mean a case under Chapter 11 of the Bankruptcy Code in which Rosa Maria Styles is the Debtor.

**10.**      **Claim** shall mean any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. All claims as such term is defined in section 101(5) of the Bankruptcy Code.

**11.**      **Class** shall mean a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of this Plan.

**12.**      **Code** shall mean Title 11 of the United States Code, otherwise known as the Bankruptcy Code.

4813-9907-5805, v. 1

13.    **Confirmation** shall mean the entry of an Order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

14.    **Confirmation Hearing** shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan.

15.    **Confirmation Order** shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

16.    **Creditor** shall mean any person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtor' estates of any kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code. This includes all persons, corporations, partnerships, or business entities holding claims against the Debtor.

17.    **Debt** means, refers to and shall have the same meaning ascribed to it in Section 101(12) of the Code.

19.    **Debtor** shall mean Rosa Maria Styles.

20.    **Disbursing Agent** shall mean the Reorganized Debtor or any party appointed by and subject to Court approval, which shall effectuate this Plan and hold and distribute consideration to be distributed to holders of Allowed Claims and Allowed Equity Interests pursuant to the provisions of the Plan and Confirmation Order.

21.    **Disclosure Statement** means and refers to the Disclosure Statement filed by the Debtor as required pursuant to Section 1125 et seq. of the Bankruptcy Code.

22.    **Effective Date** shall mean the first day of the month following the date which is thirty (30) days after the date on which the Confirmation Order becomes a Final Order.

23.    **Equity Interest Holder** shall mean the holder of an equity interest in the Debtor.

4813-9907-5805, v. 1

24. **Equity Interest** shall mean any interest in the Debtor represented by stock, warrants, options, or other rights to purchase any shares of stock in the Debtor, if applicable. Insofar as the Debtor is an individual, there are no stocks, warrants or options. The Debtor shall retain all of her property under the Plan except what is being conveyed under such Plan.

25. **Final Order** shall mean an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

26. **Impaired** when used as an adjective preceding the words "Class of Claims" or "Class of Equity Interest," shall mean that the Plan alters the legal, equitable, or contractual rights of the member of that class.

27. **Person** shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof or other entity.

27. **Petition Date** shall mean the date on which the Debtor filed this petition for relief commencing the Chapter 11 Case.

28. **Plan** shall mean the First Amended Plan of Reorganization filed in these Proceedings, together with any additional modifications and amendments.

29. **Priority Non-Tax Claim** shall mean a Claim entitled to priority under sections 507(a)(2),(3), (4), (5), (6) or (7) of the Bankruptcy Code, but only to the extent it is entitled to priority in payment under any such subsection.

30. **Priority Tax Creditor** shall mean a Creditor holding a priority tax claim.

9

4813-9907-5805, v. 1

31.    **Priority Tax Claim** shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

32.    **Proceedings** shall mean the Chapter 11 Case of the Debtor.

33.    **Professional Persons** means and refers to all attorneys, accountants, appraisers, consultants, and other professionals retained or to be compensated pursuant to an Order of the Court entered under Sections 327, 328, 330, or 503(b) of the Bankruptcy Code.

34.    **Professional Claim** means and refers to a claim by any and all professionals as provided for in Sections 327, 328, 330 and 503(b) of the Bankruptcy Code.

35.    **Proponent** means Rosa Maria Styles.

36.    **Reorganized Debtor** means the Debtor after confirmation of the Plan.

37.    **Secured Claim** means and refers to a Claim which is secured by a valid lien, security interest, or other interest in property in which the Debtor have an interest which has been perfected properly as required by applicable law, but only to the extent of the value of the Debtor's interest in such property, determined in accordance with Section 506(a) of the Bankruptcy Code.

38.    **Unsecured Claim** shall mean any Claim against the Debtor which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date for such Debtor, and which is not (i) a secured claim pursuant to Section 506 of the Bankruptcy Code, as modified by section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority under sections 503 or 507 of the Bankruptcy Code. "Unsecured Claim" shall include all Claims against the Debtor that are not expressly otherwise dealt with in the Plan.

10

**39.**    **Other Definitions** a term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein. The words "herein", "hereof", "hereto", "hereunder", and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Moreover, some terms defined herein are defined in the section in which they are used.

## C.    Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has <u>not</u> placed the following claims in a class. The treatment of these claims is provided below.

### 1.    Administrative Expenses and Fees

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code Section 503(b). Fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee were also incurred during the Chapter 11 Case. The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's unpaid administrative fees and expenses ("Compensation"), an estimate of future professional fees and other administrative claims and fees and their treatment the Plan:

4813-9907-5805, v. 1

| NAME | AMOUNT ESTIMATED | TREATMENT | TYPE OF CLAIM |
|---|---|---|---|
| Law Offices of Scott E. Kaplan, LLC | $16,428.24[1] | Payment in full on Effective Date. | Administrative |
| McManimon, Scotland & Baumann, LLC | $25,000 estimated | Payment in full on Effective Date. | Administrative |
| Anthony D. Nini (accountant) | $3,500 Estimated | Payment in full on Effective Date. | Administrative |
| Robert J. Scully, Jr. (realtor)[2] | N/A | Payment in full on Effective Date. | Administrative |
| Office of U.S. Trustee Fees | TBD | Payment in full on Effective Date. | Administrative |
| **APPROXIMATE TOTAL** | **$44,928.24 (estimated)** | | |

**Court Approval of Professional Compensation and Expenses Required:**

The Court must approve all professional compensation and expenses. Each professional person requesting compensation in the case pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than ninety (90) days after the Confirmation Date. Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan. No motion or application is required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as those fees are determined by statute.

McManimon Scotland & Baumann, LLC, Anthony Nini, and Kaplan will be paid on the Effective Date.

---

[1] Pursuant to Docket No. 128, Kaplan filed an application for compensation totaling $46,508.84 (the "Application") however, the Debtor filed an objection to the Application, and Kaplan's fees were reduced to $ 16,428.24.

[2] Although Mr. Scully was retained, Mr. Scully is not owed any fees as he did not procure a sale of the Avalon Property.

12

### 2. Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires, and thus this Plan provides, that each holder of such a 507(a)(8) priority tax claim receives the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax.

The Debtor dispute these amounts and reserves the right to review these claims. Priority tax claims shall be satisfied in accordance with the requirements of Section 507(a)(8). The Debtor shall pay creditors holding priority tax claims over sixty (60) months in accordance with 11 U.S.C. § 1129(a)(9)(C)(ii).

| DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | AMOUNT OWED | TREATMENT |
|---|---|---|---|---|
| Department of Treasury, Internal Revenue Service (POC 1) | N | N | Per the filed POC 1, the amount owed was $8,429.70[3] | N/A – claim is zero |
| Department of Treasury, Internal Revenue Service (POC 5) | N | N | $8.429.70[4] | N/A – claim is zero |

### D. Classified Claims and Interests

### 1. Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate. If there are assets available, the below creditors will be paid upon the priority they should receive, otherwise they

---

[3] This claim is a duplicate of Claim 5-3 which has been reduced to $0.
[4] This claim is a duplicate of Claim 1 ("POC 1"), and this claim has been reduced to $0.

13

will be treated as an unsecured claim.  The following represent all classes containing Debtor's

secured pre-petition claims and their treatment under this Plan:

| CLASS | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | AMOUNT OWED | TREATMENT |
|---|---|---|---|---|---|
| 1 | THOMAS J. WELSH (Welsh holds first and second mortgage lien claims) | N | N | $2,410,918.77 [5] | Satisfied from the proceeds of the closing of the Avalon Property to Proposed Purchaser or sale to Mr. Welsh as articulated herein or satisfied by the Debtor in full within sixty (60) days of the Effective Date. |
| 2 | CEBV, LLC (POC 3)[6] | N | N | $450,000[7] | Satisfied from the sales proceeds of the Avalon Property Sale or paid by the Debtor within sixty (60) days of the Effective Date. |
| 3 | Bayview Loan Servicing, LLC (POC 4) | N | N | $187,900[8] | This claim will be paid at the pre-petition contract rate in accordance with the loan documents and is thus unimpaired. |

**2. Priority Non-Tax Claims**

Certain priority non-tax claims that are referred to in Code Sections 507(a)(3), (4), (5), (6),

and (7) are entitled to priority treatment. These claims are to be treated as follows:

The Debtor does not have any such claims.

---

[5] Amount due as of December 10, 2020, per Thomas J. Welsh, Jr.'s Objection to Confirmaton of Debtor's Chapter 11 Plan (the "Welsh Objection").  See Doc. No. 152.  Mr. Welsh's claim continues to accrue interest.

[6] CEBV will release its mortgage lien claim upon payment of $450,000. Upon this payment, CEBV releases any and all claims, both secured and unsecured, against the Debtor.  See Doc. 92.

[7] CEBV's proof of claim was $17,441,408.54, however, pursuant to the Stipulation of Settlement between the Debtor and CBEV (Doc. No. 92), the Debtor agreed to pay $450,000 as a secured claim and CBEV agreed to release the balance of any and all claims.  The treatment of this claim does not change under the FirstAmended Plan.

[8] Pursuant to Notice of Mortgage Forbearance, Doc. No. 114, monthly contract rate mortgage payments resumed on October 1, 2020, in the amount of $1,416.11.

14

### 3. Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code

Section 507(a). These claims are to be treated as follows:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|---------------|----------------|-----------|
| 4 | General Unsecured Claims Filed claims  $21,523,503[9] (reduced to $15,068.79). | N | N | Paid in full on the Effective Date. |

### 4. Class(es) of Equity Interest Holders

The Debtor will be retaining her equity interest.

### E. Acceptance or Rejection of Plan

Each impaired class of Creditors with claims against the Debtor' estate shall be entitled to

vote separately to accept or reject the Plan. A class of Creditors shall have accepted the Plan if the

Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in

number of holders of the allowed Claims of such class that have accepted or rejected the Plan. In

the event that any impaired class of Creditors or Interest holders shall fail to accept the Plan in

accordance with Section 1129(a) of the Bankruptcy Code, the Proponent reserves the right to

request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the

Bankruptcy Code.

### F. Means of Effectuating the Plan

### 1. Funding for the Plan

---

[9] These claims are  reduced pursuant to the settlement between the Debtor and CEBV, the Debtor's Motion to Expunge Atlantic City Electric Co.'s Claim 2, and IRS reducing its claim to $0. There is approximately $15,068.79 in unsecured claims remaining.

4813-9907-5805, v. 1

The Plan will be funded from the Sale of the Avalon Property. As noted, the Debtor will sell the Avalon Property to Mr. Weingartner for $3,500,000 by quit claim deed. The Sale shall be all cash and scheduled to close within thirty (60) days of the Effective Date.[10] Per Mr. Welsh's Objection, upon information and belief, pursuant to a title search there were judicial/judgment liens against the Avalon Property in the aggregate amount of $19,615.62. The Debtor has satisfied these judgments. The Welsh Objection also indicates $17,276.32 due for 2018 taxes. The Debtor has paid the taxes and has pre-paid the future quarter plus an additional $900.

The Debtor has made significant progress in paying over $500,000 in creditor claims. The Debtor paid the following claims:[11]

- $53,000 to the Tax Clerk of Avalon, New Jersey for the Avalon Property;

- $250,000 to Drinkwater & Goldstein, LLP - judgment has been satisfied;

- Home insurance for the year for the Avalon Property;

- Bluewater Yacht Companies judgment has been satisfied;

- Higgins Landscaping claim has been satisfied; and

- $229,000 to Bruce Sussman for a Stipulation of Judgment pending in the Superior Court of New Jersey, Law Division, Camden County, bearing docket number CAM-L-001159-20.

In addition, the Internal Revenue Service ("IRS") filed two claims (Claims 1 & 5) against the Debtor. The claims are duplicates. Claim 5 was amended and reduced to $0. Thus, the IRS' claim has been resolved.

Atlantic City Electric Company ("AC Electric") filed a claim against the Debtor in the

---

[10] As set forth above, if Mr. Weingartner does not close within sixty (60) days of the Effective Date, the Debtor has the option of either (1) selling to Mr. Welsh for $2.9 million (as contemplated under the original plan) or (2) paying off Mr. Welsh's and all other creditors' claims within sixty (60) days of the Effective date.

[11] The payments have been funded and made by the Debtor's non-debtor spouse.

16

amount of $4,486.18 (the "Claim").  The Debtor contacted AC Electric and advised  that nothing

was owed on the account.     Thus, on February 10, 2021, the Debtor filed an Objection to AC

Electric's Claim.  See Doc. 164.  Whether the claim is expunged or not, the claim will be satisfied

in full on the Effective Date.

Conveying the Avalon Property to Weingartner will allow the Debtor to reorganize her

affairs by paying her debts  in full.  Mr. Welsh will be paid[12]   from the sales proceeds as a result

of the s Sale to  Mr. Weingartner.   In addition, CEBV will be paid from the proceeds from the

sale.

Substantial prejudice will occur if the automatic stay is not reinstated and the Avalon

Property gets sold at a sheriff's sale.  A sheriff's sale will prejudice all creditors and will not

maximize the value of the Avalon Property.[13]

### 2.  Post-Confirmation Management

Debtor is an individual so there is no "post-confirmation" management, however, all

property of the estate will re-vest in the Debtor and she will continue to own all property not

previously conveyed by court order or by this plan.

### 3.  Disbursing Agent

The Reorganized Debtor shall act as the disbursing agent for the purpose of making all

distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall

receive no remuneration for distribution services rendered and expenses incurred pursuant to the

Plan.

---

[12] The $53,000 exceeded the amount due and the overage will be applied to the second quarter taxes.  This payment brought the taxes, water, and sewer current for the Avalon Property.  The Tax Clerk advised today that there is a pending wire transaction for $4,000 which exceeds the amount due and the remainder will be applied to the third quarter.
[13] If required, the Debtor will move expediously to reimpose the stay, however, due to Covid-19, foreclosure sales have been stayed by the courty Sheriff's Office.

17

The Reorganized Debtor shall act as the Debtor's liquidating agent and shall be authorized and obligated, as such, to take any and all actions necessary or appropriate to implement this Plan or wind down the Debtor, including any and all actions necessary to (a) liquidate the Debtor's remaining assets, (b) investigate and prosecute Causes of Action on the Debtor' behalf in the Bankruptcy Court or any other court of competent jurisdiction, (c) defend, protect, and enforce any and all rights and interests of the Debtor, (d) make any and all Distributions required or permitted to be made, (e) file any and all reports, requests for relief, or objections thereto, (f) dissolve the Debtor and otherwise wind down the Debtor and any corporate entity owned by the Debtor including preparation of and filing of final tax returns, (g) file such post-Effective Date reports as may be required under applicable law, (h) pay all statutory fees, (i) object to Claims filed against the Debtor, and (j) pay any and all claims, liabilities, losses, damages, costs, and expenses incurred in connection therewith or as a result thereof, including all fees and expenses of the Plan Administrator's attorneys and other professionals. The Plan Administrator shall be authorized to execute such documents and take such other action as may be necessary to effectuate this Plan and perform his duties as liquidating agent. The Plan Administrator shall be authorized to retain attorneys and other professionals and may incur reasonable fees and expenses in the performance of his duties as the Debtor' liquidating agent, which reasonable fees and expenses shall be paid from the Administrative Reserve.

Upon the Effective Date, the Plan Administrator shall be deemed the sole member of the Debtor for all purposes, with all necessary and appropriate power to act for, on behalf of, and in the name of the Debtor. The Plan Administrator may be removed for cause by order of the Bankruptcy Court following notice and a hearing. As used in this Section, "cause" means a judicial determination that the Plan Administrator has engaged in actual fraud, gross negligence, or willful

18

misconduct, or has otherwise materially and substantially failed to discharge his duties under this Plan, and such material and substantial failure has continued for sixty (60) days following the Plan Administrator's receipt of written notice specifically asserting such failures. The Plan Administrator may also voluntarily resign, upon notice filed with the Bankruptcy Court; provided, however, that no voluntary resignation by the Plan Administrator shall be effective until a successor has been appointed.

## III.

## TREATMENT OF MISCELLANEOUS ITEMS

A.    **Executory Contracts and Unexpired Leases**

1. **Rejections**

The Plan provides that all Executory Contracts and Unexpired Leases shall be assumed, unless expressly rejected. The Order confirming the Plan shall constitute an Order approving the rejection of any and all the leases or contracts except as set forth in paragraph III(A)(1) above.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.  <u>See</u> Disclosure Statement for the specific date.

Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT WAS FEBRUARY 18, 2020.**

Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

4813-9907-5805, v. 1

**B.      Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory commission approval of their rates.

**C.      Retention of Jurisdiction.**

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the Plan, and to make such orders as are necessary or appropriate to carry out the provisions of this Plan and with respect to the following matters:

(a)      To enable the Plan Proponents to consummate the Plan and to resolve any disputes arising therefrom;

(b)      To adjudicate all controversies concerning the classification, estimation or allowance of any Claim herein;

(c)      To make such Orders as are necessary or appropriate to implement the provisions of this Plan;

(d)      To determine the classification, estimation and priority of all claims against the Debtor and to re-examine any Claims which may have been allowed;

(e)      To determine applications for the rejection or assumption of executory contracts or unexpired leases pursuant to the provisions of this Plan which are not determined prior to the Confirmation date and to determine allowance of Claims for damages with respect to rejection of any such executory contracts or unexpired leases within such time as the Court may direct;

(f)      To oversee and issue further appropriate orders respecting disbursement of amounts deposited as may be required by this Plan;

(g)      To conduct hearings on valuation, as necessary, and to determine whether any party in interest is entitled to recover against any Person any Claim, whether arising under Section 506(c) of the Bankruptcy Code, or arising out of a voidable preference, a fraudulent transfer, or otherwise;

(h)      To hear and determine all applications for compensation and other Administrative Expenses;

4813-9907-5805, v. 1

(i)     To hear and determine any and all pending adversary proceedings or contested matters;

(j)     To determine all causes of action which may exist in favor of the Debtor;

(k)     To determine any modification of the Plan after confirmation pursuant to Section 1127 of the Code;

(l)     To enter any order, including injunctions, necessary to establish and enforce the rights and powers of the Debtor under the Plan;

(m)     To enter a final decree pursuant to Rule 3022 of the Bankruptcy Rules;

(n)     To hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of the Plan;

(o)     To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of Bankruptcy Court in the Chapter 11 Case entered on or before the Confirmation Date;

(p)     To hear and determine any and all controversies and disputes arising under, or in connection with, the Plan;

(q)     To hear and determine any and all objections to payments under the Plan;

(r)     To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

(s)     To adjudicate all Claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof;

(t)     To adjudicate all causes of action to recover all assets and properties of the Debtor wherever located;

(u)     To enter any order, including injunctions necessary to enforce the title, rights and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions on such title rights and powers as the Bankruptcy Court may deem necessary or appropriate; and

(v)     To make such orders as are necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting or enforcing the provisions thereof.

In addition, the Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code.

21

4813-9907-5805, v. 1

If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without

jurisdiction over any matter set forth in this Section, or if the Debtor or the reorganized Debtor

elect to bring an action or proceeding in any other forum, then this Section shall have no effect

upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public

authority or commission having competent jurisdiction over such matters.

**D.    Procedures for Resolving Contested Claims.**

Objections to Claims and interests, except for those Claims more specifically deemed

Allowed in the Plan, may be filed by the reorganized Debtor or any party in interest up to and

including sixty (60) days following the entry of the Confirmation Order. With respect to disputed

Claims or interests, the Disbursing Agent will hold in a separate interest bearing reserve account

such funds as would be necessary in order to make the required distribution on the Claim or

interest, as listed either in the Debtor' schedules or the filed proof(s) of claim.

**E.    Transfer/Sale of Property is not subject to Realty Transfer Fees or Tax under 11**

**U.S.C. § 1146(a)**

Pursuant to §1146(a) of Title 11, the "issuance, transfer, or exchange of a security, or the

making or delivery of an instrument of transfer under a plan confirmed under section 1129 or 1191

of this title, may not be taxed under any law imposing a stamp tax or similar tax.  Accordingly,

any transfer to Mr. Weingartner or Mr. Welsh is not subject to any tax.    Such sale/transfer shall

be free and clear of liens claims and encumbrances of any kind, with valid liens, to attach to the

proceeds of sale.

**F.    Notices under the Plan**

All notices, requests or demands with respect to this Plan shall be in writing and shall

be deemed to have been received within five (5) days of the date of mailing, provided they are

4813-9907-5805, v. 1

sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to

the Proponent, addressed to:

> Anthony Sodono, III, Esq., and Sari B. Placona, Esq.
> c/o McManimon, Scotland & Baumann, LLC
> 75 Livingston Avenue
> Roseland, New Jersey 07068

## IV.

## EFFECT OF CONFIRMATION OF PLAN

### A.    Discharge

This Plan provides that upon confirmation of the Plan and tendering the payments as set

forth herein, Debtor shall be discharged of liability for payment of debts incurred before

Confirmation, to the extent specified in 11 U.S.C.§ 1141. However, any liability imposed by the

Plan will not be discharged. If Confirmation of this Plan does not occur, the Plan shall be deemed

null and void. In such event, nothing contained in this Plan shall be deemed to constitute a waiver

or release of any claims against the Debtor or their estates or any other persons, or to prejudice in

any manner the rights of the Debtor or their estates or any person in any further proceeding

involving the Debtor or their estates. The provisions of this Plan shall be binding upon Debtor, all

Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest

Holders are impaired or whether such parties accept this Plan, upon Confirmation thereof.

Moreover, any judgments docketed against the Debtor or their real properties in the State of New

Jersey and any county or subdivision thereof will be expunged upon the Effective Date of the Plan.

### B.    Release of Claims

Except as otherwise expressly provided for in this Plan, the distributions and rights

afforded in the Plan shall be complete and full satisfaction and release, effective as of the Effective

Date, of all Claims against the Debtor or any of their assets or properties of any nature whatsoever.

23

4813-9907-5805, v. 1

Commencing on the Effective Date, except as otherwise expressly provided for in this Plan, all Claimants are forever releasing, waiving, and discharging and shall be precluded forever from asserting against the Debtor and her bankruptcy estate fiduciaries and properties any other or further claims, obligations, suits, judgments, liens, encumbrances, damages, debts, rights, causes of action, and liabilities whatsoever arising on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or the Plan, including but not limited to all principal and accrued and unpaid interest on the debts of the Debtor based on any act or omission, transaction or other activity or security instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date, that was or could have been the subject of any Claim, whether or not Allowed; provided, however, that such release, waiver and discharge shall not apply in any respect to any acts or omission that are the result of fraud, gross negligence or willful misconduct by the Debtor from the Petition Date to the Effective Date.

On and after the Effective Date, as to every Claim, every Holder of a Claim shall be precluded from asserting against the Debtor and her bankruptcy estate fiduciaries and its respective assets and/or properties any further Claim based on any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

### C.    Modification of Plan

The Proponent of the Plan may modify the Plan at any time before Confirmation, however, the Court may require a new disclosure statement or re-voting on the Plan if Proponent modifies the Plan before Confirmation.

The Proponent may also seek to modify the Plan at any time after Confirmation so long as (1) the Plan has not been substantially consummated; and (2) the Court authorizes the proposed modification after notice and a hearing.

24

**D.    Revesting of Property in the Debtor**

Except as provided in Section IV.E. hereinafter, and except as provided elsewhere in the

Plan, the Confirmation revests the property of the estate in the Debtor.

**E.    Modification of Plan**

The Proponents of the Plan may modify the Plan at any time before Confirmation.

However, the Court may require a new disclosure statement or re-voting on the Plan if Proponent

modifies the Plan before Confirmation.

The Proponents may also seek to modify the Plan at any time after Confirmation so long

as (1) the Plan has not been substantially consummated; and (2) the Court authorizes the

proposed modification after notice and a hearing.

**F.    Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under §

1112(b), after the Plan is confirmed, if there is a default in performing under the Plan. If the Court

orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been

property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest

in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only

if relief from stay was not previously granted by the Court during this case.

**G.    Post-Confirmation Quarterly Fees**

Quarterly fees pursuant to 28 U.S.C. Section 1930 (a)(6) continue to be payable to the

office of the United States trustee post-confirmation until such time as the case is converted

dismissed or closed pursuant to a final decree.   Operating reports will continue to be filed quarterly

(not monthly) and shall continue until the case was closed.

**McMANIMON, SCOTLAND
& BAUMANN, LLC**

25

*Counsel to Debtor and Debtor-in-Possession,*
*Rosa Maria Styles*

By:_____/s/ Anthony Sodono, III_____
         ANTHONY SODONO, III

    _____/s/ Rosa Maria Styles_____
         ROSA MARIA STYLES

4813-9907-5805, v. 1

United States Bankruptcy Court

District of New Jersey

In re:                                                                      Case No. 19-32881-ABA

Rosa Maria Styles                                                           Chapter 11

    Debtor

# CERTIFICATE OF NOTICE

District/off: 0312-1                        User: admin                              Page 1 of 2

Date Rcvd: Mar 18, 2021                     Form ID: pdf903                        Total Noticed: 1

The following symbols are used throughout this certificate:

**Symbol**    **Definition**

+        Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Mar 20, 2021:**

**Recip ID**        **Recipient Name and Address**
db          +  Rosa Maria Styles, 61 Hartford Road, Sewell, NJ 08080-2040

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Mar 20, 2021                    Signature:        /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on March 18, 2021 at the address(es) listed below:**

**Name**        **Email Address**

Anthony Sodono, III

        on behalf of Debtor Rosa Maria Styles asodono@msbnj.com

Anthony Sodono, III

        on behalf of Accountant Anthony Nini asodono@msbnj.com

Anthony Sodono, III

        on behalf of Attorney McManimon Scotland & Baumann  LLC asodono@msbnj.com

Denise E. Carlon

        on behalf of Creditor BAYVIEW LOAN SERVICING  LLC, A DELAWARE LIMITED LIABILITY COMPANY dcarlon@kmllawgroup.com, bkgroup@kmllawgroup.com

Denise E. Carlon

        on behalf of Creditor Community Loan Servicing  LLC f/k/a Bayview Loan Servicing LLC dcarlon@kmllawgroup.com, bkgroup@kmllawgroup.com

Jason C Manfrey

on behalf of Defendant CEBV  LLC jmanfrey@foxrothschild.com,
jdistanislao@foxrothschild.com;rsolomon@foxrothschild.com;brian-oneill-fox-5537@ecf.pacerpro.com

Jason C Manfrey

on behalf of Creditor CEBV  LLC jmanfrey@foxrothschild.com,
jdistanislao@foxrothschild.com;rsolomon@foxrothschild.com;brian-oneill-fox-5537@ecf.pacerpro.com

Jeffrey M. Sponder

on behalf of U.S. Trustee U.S. Trustee jeffrey.m.sponder@usdoj.gov  jeffrey.m.sponder@usdoj.gov

Michael G. Menkowitz

on behalf of Defendant CEBV  LLC mmenkowitz@foxrothschild.com,
brian-oneill-fox-5537@ecf.pacerpro.com;jdistanislao@foxrothschild.com

Michael G. Menkowitz

on behalf of Creditor CEBV  LLC mmenkowitz@foxrothschild.com,
brian-oneill-fox-5537@ecf.pacerpro.com;jdistanislao@foxrothschild.com

Rebecca K. McDowell

on behalf of Creditor Thomas J. Welsh  Jr. rmcdowell@slgcollect.com

Sari Blair Placona

on behalf of Debtor Rosa Maria Styles splacona@msbnj.com

Scott E. Kaplan

on behalf of Plaintiff Rosa Maria Styles scott@sekaplanlaw.com
felisha@sekaplanlaw.com,sekparalegal@gmail.com,anthonyninicpa@gmail.com,buparalegal@gmail.com

Scott E. Kaplan

on behalf of Attorney Scott E Kaplan scott@sekaplanlaw.com
felisha@sekaplanlaw.com,sekparalegal@gmail.com,anthonyninicpa@gmail.com,buparalegal@gmail.com

U.S. Trustee

USTPRegion03.NE.ECF@usdoj.gov

William M.E. Powers

on behalf of Creditor BAYVIEW LOAN SERVICING  LLC ecf@powerskirn.com


TOTAL: 16